## LARAMIE NATIONAL BANK OF LARAMIE CITY v. STEINHOFF.

PUBLIC LANDS—PARTIES—ACTION TO QUIET TITLE—JURISDICTION—COURTS—EVIDENCE—PRESUMPTIONS.

1. Where title to land in controversy is in the United States, which is not a party to the action, the court is unauthorized, for want of necessary parties, to render judgment decreeing title out of the government, and a title in fee simple in another party.

2. It appearing that in a former action between the parties the successful contestant claimed title to land in controversy, not under a patent from the United States, but under a certificate of purchase issued by the receiver of the land office, and the judgment therein showing that the Commissioner of the General Land Office had cancelled, or attempted to cancel, such certificate, and it appearing in the present suit that subsequently to the rendition of the judgment aforesaid a final receipt and patent had issued to the unsuccessful party in the former action, who brings suit to vacate the former judgment; *held,* as against the contention that there was no proof that patent from the government had not issued at the date of said judgment, that the above facts are inconsistent with a supposition that

a patent had formerly issued, and it must be accepted as an established fact in the case that when judgment in the former action was rendered no patent had issued.

3. Until a patent issues from the government for public lands of the United States, and while the disposition of the title is pending in the Land Department, the courts will not interfere to control the department in disposing of it.

4. After patent for public lands of the United States has issued, so that title has passed into private ownership, the courts may determine the equities of parties properly before them, in respect to the land, and in doing so may declare the illegality of acts of the Land Department, and afford appropriate remedy.

5. While title to public lands is in the government, and the question of its disposal is pending and undetermined in the Land Department, the courts have no jurisdiction to try the question of title as between claimants, and by decree deprive the government of its title and transfer it to one of the claimants.

6. In an action to quiet title to lands, the title to which was still in the United States, and the question of its disposal still pending in the Land Department, which had assumed to cancel the certificate of purchase under which plaintiff claimed, the court was without jurisdiction to restore and give vitality to the cancelled certificate, and decree title in fee simple in the plaintiff, as against a homestead entryman who claimed a right in opposition to the certificate.

7. But the court had jurisdiction to try the right of possession as between the parties, and in determining that question might, perhaps, treat the cancelled certificate as in full force and effect, and the homestead entry of the other party as without validity. But such judgment will not bind the parties as to title afterwards acquired, and the right of possession incident to it.

8. Although title to public land is still in the United States, and its disposition still pending in the Land Department, the courts have jurisdiction to try and determine the question of the right to possession between rival claimants, and to make the necessary orders to enforce its judgment.

9. Where, prior to a judgment in an action to quiet title between rival claimants to public land, the final receipt of plaintiff's

grantor had been cancelled in the land office, and the defendant had been permitted to make a homestead entry; and, after judgment decreeing title in plaintiff, defendant made his proof, and obtained final receipt and patent, the matter of the disposal of the land was still pending and undetermined in the Land Department at the time of judgment.

10. An action was brought to quiet title to certain lands, plaintiff claiming the same by virtue of a final receipt from the United States Land Office, which the Land Department had assumed to cancel. Defendant claimed under a homestead entry. The court found that the receipt of plaintiff had been illegally cancelled, and decreed title in fee simple in plaintiff and enjoined defendant from interfering with plaintiff's possession. Thereafter defendant made proof under his entry, obtained final receipt, and afterwards a patent granting him the title of the government. He brought suit to vacate the former judgment. *Held,* that the former judgment should be vacated, as rendered without jurisdiction, so far as it decreed title in the former plaintiff, and enjoined the former defendant from interfering with such former plaintiff's possession; but that it would not be vacated so far as it merely adjudged the right of possession at the time of the judgment.

[Decided March 31, 1903. On rehearing, August 3, 1903.]

(71 Pac., 992; 73 Pac., 209.)

ERROR to the District Court, Albany County, HON. CHARLES W. BRAMEL, Judge.

Philip A. Steinhoff instituted the action to vacate a judgment previously rendered in an action brought against him by the Laramie National Bank of Laramie City. From a judgment in favor of the plaintiff the defendant prosecuted error. The material facts are stated in the opinion.

*N. E. Corthell,* for plaintiff in error.

It is not contended that the rights of the parties could not have changed after the rendition of the judgment, or that no case could be made which would justify or require the court to set aside so much of it as was injunctive and

prospective in its operation. We submit, however, that it is at least equally clear that the plaintiff can have relief against the judgment in but one of two ways: First, by showing that the judgment was, at the time, a nullity; or, second, by showing facts since the judgment by which (a) the bank's title has been divested and (b) a new title given to the plaintiff. We think it clear that the judgment was not a nullity.

The District Court is a superior court of general jurisdiction. Every presumption is in favor of its jurisdiction and none are against it. (Manier v. Trumbo, F. C. No. 18309; Butcher v. Bank, 2 Kan., 80; Suiter v. Turner, 10 Ia., 526; Holmes v. Campbell, 12 Minn., 221; Welch v. Sykes, 3 Gilman, 197; Galpin v. Page, 85 U. S., 350; Sullivan v. Vail, 42 Conn., 90; Bridgman v. Wilcutt, 4 Greene, 563; Kenny v. Greer, 13 Ill., 432; Dodge v. Cole, 97 Ill., 338; Gramm v. Fisher, 4 Wyo., 1; Reynolds v. Manhattan Trust Co., 109 Fed., 97.)

The argument submitted by counsel for the plaintiff, when analyzed, will be found, not so much to question the jurisdiction of the court, as the rightfulness of its determination; in other words, it is insisted that the court's judgment is void, not because it had no right to render *any* judgment, but because it rendered *an erroneous judgment*. This argument would be pertinent upon appeal seasonably taken in the original case—a remedy which the plaintiff allowed to go by. It is not a valid argument for the vacation or even the modification of the judgment in another suit. (1 Black on Judgments, 329.) Nor can this argument be supported upon any ground which might have been pleaded in defense in the original action. The judgment is binding and conclusive, not only as to the defenses made, but upon all that existed and might have been made in the original suit. (1 Black on Judgments, 330; Seaman v. Ins. Co., 86 Fed., 498; Foltz v. Ry. Co., 60 Fed., 316; Ry. Co. v. Homestead Co., 123 U. S., 552; Insley v. U. S., 150 U. S., 512.)

We should have no hesitation in upholding the original judgment as essentially a righteous and just determination of the rights of the parties as they stood at the time of that litigation; but it would be a waste of time to enter upon such an inquiry, as the question of the rightfulness or wrongfulness of the judgment cannot come before the court in this case.

If the District Court could in any case review its own judgments, and decide anew upon the subject matter, surely it could not and would not do so without having all the original facts and issues properly pleaded and set before it. To set aside a judgment without looking into the grounds upon which it rested would be contrary to the fundamental idea of judicial power, which hears before it condemns and examines before it decides. The court could not have reached the result it did in the present case unless it set out with the presumption that the judgment was wrong, and that the court's jurisdiction was a thing to be shown, rather than to be assumed until successfully attacked.

Stripped of all unnecessary and unessential adjuncts, the former suit was simply an action, by a private owner in possession, to quiet title to a tract of land within the territorial jurisdiction of the court. Such an action is especially authorized by statute, as well as within the general equitable jurisdiction of the court. (R. S., Sec. 4104.) The requirements of pleadings in such an action are of the simplest character. (Durell v. Abbott, 6 Wyo., 265.)

The state of the title at the time of the original litigation does not appear in this action, and counsel would not be justified even in assuming that the United States had not then issued a patent. But, though this assumption were indulged, it would not alter the case. The question of the jurisdiction of courts to hear and determine controversies between private parties concerning the title to public land does not depend upon the issuance of patent. In a recent case, which is much relied upon by counsel for the plaintiff, neither party had a patent, and it was not even suggested

that this fact affected the jurisdiction of the court. (Orchard v. Alexander, 157 U. S., 372.)

And this court itself has entertained at least three cases of this character, including the consideration, for another purpose, of the particular judgment sought to be vacated in this action. (Caldwell v. Bush, 6 Wyo., 342; Delles v. Second Nat. Bank, 7 Wyo., 66; Laramie Nat. Bank v. Steinhoff, 7 Wyo., 464.)

Assuming, then, that the first ground taken by the court below in its decision of the present case, viz., that the original judgment was without jurisdiction and a nullity, is not well taken, and that the judgment, at the time it was rendered, was within the jurisdiction of the court, it is submitted in the second place that the judgment was conclusive and binding upon the parties as to the question involved in that litigation. It settled, as between the parties, the title to the land as it stood at that time. Its decree that the bank was then the owner of the land, necessarily determined in its favor, every fact essential to its title and upon which its claim was founded. It specifically, among other things, established intact the final certificate under which the bank derived its title. Whatever proceedings might afterwards be taken to affect such title, Steinhoff could not afterwards insist upon any proceedings which had been taken before that time. If the decision of the case involved the consideration of the proceedings of the land office in a cancellation of the final certificate, attempted prior to that time, the court had unquestionable power to consider and determine such question. (Cornelius v. Kessel, 128 U. S., 456; Lindsey v. Hawes, 67 U. S., 554; Garland v. Wynn, 61 U. S., 6; Turner v. Sawyer, 150 U. S., 578; Johnson v. Towsley, 80 U. S., 72; Delles v. Sec. Nat. Bank, 7 Wyo., 66; Parsons v. Venzke, 164 U. S., 89; Carroll v. Safford, 3 How., 460; Shepley v. Cowan, 91 U. S., 343; Lytle v. Arkansas, 9 How., 333; Barnard v. Ashley, 59 U. S., 43.)

There remains to be considered but one other question, viz.: Do the facts alleged in the petition, and not denied or

met by new matter in the answer, which have occurred subsequent to the rendition of the judgment in question, change the rights of the parties? That is, do they show, first, that the title of the bank then established has been destroyed, and, second, that a new and better title has been created in Steinhoff? Certainly nothing short of this showing could justify the court in setting aside that judgment.

The plaintiff relies for this purpose solely upon the acceptance of his final proof and the issuance of a patent to him. But the acceptance of such final proof and the issuance of such patent are, in themselves, of no force against a third party.

It is argued that the presumptions indulged in favor of the regularity of the acts of the land office are sufficient to conclude the bank. Speaking of such presumptions, in an analogous case, the Supreme Court of the United States says: "In no case have they been held sufficient where the fact in issue was, whether the Government had any title to convey, to establish the fact in dispute as against parties claiming a pre-existing, adverse and paramount title in themselves. All that can be reasonably or lawfully claimed as the effect of such documents of title is that they passed such estate, and such estate only, as the Government itself, in whose name and on whose behalf the official acts appear to have been done, had at the time, and not to conclude the fact that the estate conveyed was lawfully vested in the grantor at the time of the grant." (Sabariego v. Maverick, 124 U. S., 261, and see Van Wyck v. Knevals, 106 U. S., 360.)

It is alleged in the answer that the plaintiff's final proof and patent were wholly based upon his homestead entry, made before the original litigation, and the validity of which was drawn in question, tried and determined in favor of the bank in that litigation. Of such right, it is said that "the holder of a legal title in bad faith must always yield to a superior equity. As against the United States, his title may be good, but not as against one who had acquired a

prior right from the United States, in force when his pur-
chase was made under which his patent issued." (Widdi-
comb v. Childers, 124 U. S., 405.)

   *Groesbeck & Carpenter,* for defendant in error.

   The action to set aside this judgment is a civil action
under our code.  It is akin to the action of *Audita Querela*
under the common law, or under the ancient equity practice,
which was the name of a writ constituting the initial process
in an action brought by a judgment defendant to obtain
relief against the consequences of the judgment on account
of some matter of defense or discharge arising since its
rendition, and which could not be taken advantage of other-
wise.  (1 Ency. Law (1st Ed.), 1003; 3 Ency. Pl. & Pr.,
113, *et seq.*)

   An *Audita Querela* lies where a defendant against whom
a judgment is recovered, and who is, therefore, in danger
of execution, may be relieved upon good matter of discharge,
which has happened since the judgment.  Where the de-
fendant has good matters to plead, but has had no oppor-
tunity of pleading it, an *Audita Querela* lies in the nature
of a bill in equity for relief against the oppression.  The
writ was invented lest in any case there should be an op-
pressive defect of justice, where a party who has a good
defense cannot make it in the ordinary forms of law.  (An-
derson's Law Dict., p. 95.)

   If a judgment be voidable for want of notice, or for
a false statement, it should be set aside by an *Audita
Querela.*   It cannot be questioned collaterally.  (Landis v.
Grant, 10 Howard, 348; 3 Ency. Pl. & Pr., 113, *et seq.;*
1 Freeman on Judgments, Sec. 95, *et seq.;* 1 Black on
Judgments, Sec. 299.)

   Relief in equity may be granted in cases of fraud or
collusion, but it will not be granted in other cases, unless
it clearly appears that to allow the judgment to be exe-
cuted would be contrary to equity and good conscience,
and that the facts which render it inequitable were un-

availing as a defense in the action in which the judgment was recovered without any fault or negligence of the losing party. (Crim v. Handley, 94 U. S., 652.)

And relief will be granted in equity against a judgment at law when a defense could not at the time, or under the circumstances, be made available without any laches on the part of the complainant. (16 Ency. Law (2d Ed.), 379.)

If a fact material to the merits should be discovered after trial, and could not by ordinary diligence have been discovered before trial, the judgment may be enjoined. (Haltzell v. Randolph, 9 Fla., 366.)

It is a regular suit in which parties may plead and take issue on the merits. (Avery v. U. S., 12 Wall., 304.)

The proceedings in such case is by proper proceeding by bill in equity or a petition. (State v. Sup. Court, 52 Pac., 1013.)

The setting aside of a judgment after the term is within the equitable powers of a court. (185 Pa. St., 602.)

The powers of a court of record to vacate its judgments and award new trials in the furtherance of justice does not depend on the code. (Donnelly v. McArdle, 43 N. Y. S. (14 App. Div.), 217; Wilson v. Wilson (Ala.), 21 So., 67; Graham v. Bank, 32 S. E., 245; Losey v. Niedig (Neb.), 71 N. W., 1067; Hockaday v. Jones (Okla.), 56 Pac., 1064; Myers v. Smith, 80 N. W., 273; 59 Neb., 301; Handley v. Jackson (Ore.), 50 Pac., 915; Cowley v. R. R. Co., 159 U. S., 569; Wofford v. Booker, Tex. Civ. App., 30 S. W., 67; Ross v. Banta (Ind. Sup.), 34 N. E., 865.)

It is apparent that either under the code, or even where the code makes no provision for such action, the same is a proper remedy, after the term, to set aside a judgment, except for clerical misprision, or for mere irregularities.

. Indeed, the form of action, or the right to bring it, is not seriously questioned, if questioned at all, in the brief of the plaintiff in error.

Steinhoff is the only one who has ever had a patent from the Government and the title in fee to the disputed tract. The land being government land, title could only vest in the patentee, and this is Steinhoff, who has now and since the attacked judgment was rendered, both the legal and equitable title, which are now merged in his person by the issuance to him of the government patent. The bank had whatever right its grantor had—no more, no less. That right has been cancelled by the Land Department of the United States, as it had a perfect right to do, and its action in that respect is not questioned. Nowhere does it appear, either in the pleadings or in the brief of counsel, that there was any error of the Land Department in cancelling the final receipt issued to the grantor of the bank, or in the issuance of the patent to Steinhoff by reason or on account of fraud, imposition on the land officers, mistake, error or misconception of the law on their part, or anything else that would render their action or the patent void, or subject to review by the courts. Counsel seem to contend that after one certificate or final receipt has been issued by the Government, it could not be cancelled. This contention in support of the judgment has long ago been exploded, as an inspection of the following cases will determine:

The Land Department has jurisdiction to cancel an original entry for public lands at any time before patent is issued. (Hawley v. Diller, 178 U. S., 476; Caldwell v. Bush, 6 Wyo., 342.)

Steinhoff has the only title to the lands. The owner, the United States, has parted with its title to Steinhoff, and he alone has the title in fee simple to the disputed tract, and his title has not been drawn in question in this suit and cannot be questioned here. Whatever right to a title the bank has could have been shown by answer, and if it is or has been entitled to the title, that should have appeared by its answer. There is no such allegation therein; it is claimed simply that the judgment of a state court has decided the question irrevocably, although the Land Department has

the supreme right to award the title, and has since given it to Steinhoff, as it alone had the right to do.

The action of the Land Department may be reviewed in certain cases, as after patent issues, but any attempt on the part of the courts or any officer to control the Land Department before and until patent issues is futile. After patent is issued a different question is presented. Then, in a proper suit and proceeding, the action of the Land Department of the Government may be reviewed in certain respects, but not before.

The power of the Land Department to enquire into the extent and validity of rights claimed against the Government does not cease until the legal title has passed. (Michigan L. & L. Co. v. Rust, 168 U. S., 589; Bishop, &c., v. Gibbon, 158 U. S., 155; Re Emblem, 161 U. S., 52; Hawley v. Diller, 178 U. S., 476.)

The decisions of the Land Department upon matters of fact within its jurisdiction are, in the absence of fraud or imposition, conclusive and binding on the courts of the country; its decision as to the actual physical character of certain lands is not subject to review by the courts. (Heath v. Wallace, 138 U. S., 573.)

So, also, a party cannot defend against a patent for land duly issued by the United States upon an entry made at the local land office, on the ground that he was in actual possession of the land at the time of the issue of the patent. (Johnson v. Drew, 171 U. S., 93.)

The judgment attacked in our petition in the court below was erroneous beyond a doubt. It was also void because it declared the title to the land in dispute to be held in fee by the bank, when it was in the United States, the patent not having then been issued, and because it attempted to transfer a title which was yet in the United States, and, further, because it attempted to forestall the action of the Land Department of the Government. While the courts may deal with the possession of the land, prior to the issue of the patent, or enforce contracts between the parties con-

cerning the land, they cannot transfer a title which is yet in the United States. (Marquez v. Frisby, 101 U. S., 473; Orchard v. Alexander, 157 U. S., 372.)

However, it is a matter of no importance whether or not the assailed judgment was void. Matters have occurred since its rendition which render its continued enforcement and validity impossible. Defendant in error has the title to the land, and has had it since December 15th, 1897. Clearly under the authorities cited, as well as under the reason of the case as tested by elementary law and the fundamental principles of equity, the judgment was properly vacated and set aside in this case by the same court that rendered it.

*N. E. Corthell,* for plaintiff in error, on rehearing.

Upon the reasoning of the court in its opinion, the judgment should not be entirely vacated. The court had jurisdiction to determine right to possession; and there was a judgment for costs which should not be disturbed.

*H. V. S. Groesbeck,* for defendant in error, on rehearing.

The right of possession in this case must depend and does depend wholly upon the legal title, and the District Court declaring the title in the bank, possession followed and was decreed as a mere incident to the title, and not for any other reason. The question of title now being conclusively and beyond all controversy settled in Mr. Steinhoff by the government patent, which is not even assailed, and under which he is not sought to be converted into or declared to be the trustee for the bank, the whole matter is settled and he is the owner in fee simple of the land in controversy, and this ownership absolutely carries with it the possession of the premises.

It is apparent that the Land Department, in passing upon the Steinhoff homestead entry, passed upon his qualifications as a homesteader, his possession, his right to possession, his residence for the required time, or an excuse

which it deemed sufficient for not maintaining his residence on the land, his settlement and improvements on the land, and of all matters which showed that he was entitled to a patent, and, being satisfied in these respects, a patent for the land was issued to him; that these findings which culminated in the patent are conclusive upon the courts unless directly attacked, and no direct attack has been made upon the patent. These matters being within the exclusive jurisdiction of the Land Department, the erroneous and void judgment of the District Court for Albany County must give way, not only as to its findings and judgment on the title, but from the possession flowing from that title, which are merely incidental to the title and are based upon it. The judgment is void in toto, because it is apparent therefrom that possession was decreed in the bank for the reason solely that the bank had title, the right of possession and possession of the land in question depending solely upon the legal title. It is impossible to separate the findings and judgment in such a manner as to award possesion to the bank independently of the award of the title. Furthermore, since the rendition of the judgment, facts have arisen which make its enforcement inequitable and shocking to the moral sense. We have the title which gives us the possession and right to the possession, and the findings and judgment of the Land Department in these respects are final and conclusive and beyond all controversy.

If the costs have not been collected, the judgment is dormant in that respect, as the judgment was rendered in 1892, and under our statutes it became dormant five years from its date unless renewed by execution, and this is not shown. (R. S., Sec. 3834.)

(The following authorities were cited as to the effect of the patent: Johnson v. Drew, 171 U. S., 93; Bagnell v. Broderick, 13 Pet., 436; 19 Ency. L. (1st Ed.), 331, 354; R. Co. v. Gordon, 41 Mich., 420; Astrom v. Hammond, 3 McLean, 107; Stark v. Starr, 6 Wall., 402; Irvine v. Marshall, 20 How., 558; Gibson v. Choteau, 13 Wall., 92;

Shepley v. Cowan, 91 U. S., 330; Lesseur v. Price, 12 How., 59; French v. Spencer, 21 id., 228; U. S. v. Freyberg, 32 Fed., 195; Ins. Co. v. Hayden, 21 Colo., 127; Min. Co. v. Lee, 21 id., 260; Gale v. Best, 78 Cal., 235; Chever v. Horner, 11 Colo., 68; Smelting Co. v. Kent, 104 U. S., 636; Steel v. Smelting Co., 106 id., 447; King v. McAndrews, 111 Fed., 860; Green v. Barker (Neb.), 66 N. W., 1032; Grandin v. LaBar (N. D.), 57 N. W., 241; Ord v. Pratt, 43 Kan., 419; Jeffords v. Hine (Ariz.), 11 Pac., 351; Stewart v. Sutherland, 93 Cal., 270; Matthews v. O'Brien, 84 Minn., 505; Gage v. Gunther, 136 Cal., 338; 17 Ency. Pl. & Pr., 128, 129.)

CORN, CHIEF JUSTICE.

This was an action brought in 1899 in the District Court of Albany County by Steinhoff to vacate a judgment formerly rendered against him in favor of the bank in the same court.  The petition sets out that on March 1st, 1892, the court rendered judgment in favor of the bank and against defendant in error, Steinhoff, finding that the bank was seized in fee simple and in the actual possession of a certain quarter section of land in controversy between the parties, and that it derived its title under a final certificate of purchase issued by the Receiver of the United States Land Office at Cheyenne to one John J. Deane, grantor of the plaintiff; that the court by its judgment further found that certain action of the Commissioner of the General Land Office and the Register and Receiver of the Land Office at Cheyenne, in attempting to cancel and set aside the said certificate of purchase, did not in any manner affect the title of plaintiff, but that such certificate was still in force and a subsisting muniment of title to the said lands; that Steinhoff had no right, title or interest in the land; that his entry upon it was wrongful and plaintiff was entitled to peaceable possession and enjoyment of the premises; that the plaintiff was decreed, as against the defendant and all persons claiming under him, to be the owner in fee simple,

and defendant was perpetually enjoined from in any way interfering with its possession; that no appeal from this judgment was taken by Steinhoff, and that it was still in full force.

The petition in this action further alleges that, after the judgment, and on the 20th day of April 1897, Steinhoff perfected his original homestead entry and obtained a final certificate, and on the 15th day of December, 1897, a patent from the United States vesting in him the equitable and legal title; and that the matter of making final proof by Steinhoff and the issuance of patent to him were not drawn in controversy in the former action.

There was a demurrer to the petition which was over-ruled, and the bank answered, denying that Steinhoff perfected his original homestead entry in April, 1897, but admitting the issuance to him of a final homestead receipt on April 20, 1897, and of a United States patent to him on the 15th day of September in the same year. The answer further alleged that the existence and validity of Steinhoff's original homestead entry was submitted to the court and determined adversely to him in the former action; and that his pretended final proof and pretended final homestead receipt issued to him and the pretended patent also issued to him were wholly based upon such original homestead entry. The answer further alleged that the final certificate of purchase of John J. Deane, the existence and validity of which was drawn in question and determined in favor of the bank in the original action, was still in full force, and that no proceedings for the cancellation or avoidance of it had been taken subsequent to the judgment.

There was a demurrer to the answer which was sustained. The bank refused to plead further, and there was a judgment in favor of Steinhoff vacating the judgment in the former action. The bank brings the case by petition in error to this court.

The position of the plaintiff in error, as we understand, is to the effect that there are only two reasons which would

authorize the court to set aside its former judgment: First, that the court was without jurisdiction and the judgment void, and, second, that new facts have arisen since the original judgment which have destroyed the right of the bank under that judgment and vested a new and hostile right in Steinhoff. Plaintiff in error then argues that the court unquestionably had jurisdiction by virtue of Section 4104 of the Revised Statutes of Wyoming, which provides that "an action may be brought by a person in possession by himself or tenant of real property against any person who claims an estate or interest therein, adverse to him, for the purpose of determining such adverse estate or interest." That the court having jurisdiction of the parties and of the subject matter of the action, the judgment was a final adjudication of the rights of the parties in the land, was conclusive and binding upon them as to the questions involved in the litigation and settled, as between them, the title to the land as it stood at that time.

In our own opinion, there is no reason to question the jurisdiction of the District Court under the section of the statute referred to. It was empowered to try and determine the question of the right of possession to the premises and to make the necessary orders to enforce its judgment. It had the parties to that controversy regularly before it and, so far as the judgment found the right of possession in the bank and enjoined the defendant, Steinhoff, from interfering with such possession, we think it was clearly within the jurisdiction of the court.

But the judgment went beyond this and decreed the bank to be the owner in fee simple of the land, and granted a perpetual injunction against the defendant. In this the court went beyond its jurisdiction. The title to the land was in the United States, and the Government was not a party to the action. So that, even if it had been otherwise competent for the court to render a judgment decreeing title out of the Government, it did not have the necessary parties before it. We do not overlook the fact that counsel

for plaintiff in error, while not affirming that a patent had issued, suggests that there is no proof in the case that one had not issued at the time the first judgment was rendered. But the bank claimed title by virtue of a certificate of purchase, and not under a patent, and the court expressly found that it derived its title under a final certificate of purchase issued by the Receiver of the Land Office at Cheyenne. It also appears from the judgment itself that the Commissioner of the General Land Office had cancelled, or attempted to cancel, the final certificate issued to the bank's grantor. And, moreover, it appears that, subsequently to the rendition of the judgment, a final receipt and patent issued to Steinhoff. These facts are inconsistent with any supposition that a patent may have formerly issued, and it must be accepted as one of the facts of the case that, at the time the first judgment was rendered, no patent had been issued.

But independently of the fact that the necessary parties were not before it, the court exceeded its powers in decreeing title in the bank under the facts of this case. The disposal of the public lands is committed by Congress to the Land Department, and title from the Government to lands which are open to entry under the various acts of Congress can only be obtained through that department. Until a patent issues and while the disposition of the title is still pending in the Land Department the courts will not interfere to control the department in disposing of it. In Johnson v. Towsley, 13 Wall., 87, the Supreme Court of the United States say: "This court has at all times been careful to guard itself against an invasion of the functions confided by law to other departments of the Government, and in reference to the proceedings before the officers intrusted with the charge of selling the public lands it has frequently and firmly refused to interfere with them in the discharge of their duties, either by mandamus or injunction, so long as the title remained in the United States and the matter was rightfully before those officers for decision." And, in a later case, the same court say: "We have repeatedly

held that the courts will not interfere with the officers of the Government while in the discharge of their duties in disposing of the public lands, either by injunction or mandamus. (Litchfield v. Register and Receiver, 9 Wallace, 552; Gaines v. Thompson, 7 id., 347; The Secretary v. McGarrahan, 9 id., 298.) And we think it would be quite as objectionable to permit a state court, while such a question was under the consideration and within the control of the executive department, to take jurisdiction of the case by reason of their control of the parties concerned, and render a decree in advance of the action of the Government, which would render its patent a nullity when issued. After the United States has parted with its title and the individual has become vested with it, the equities subject to which he holds it may be enforced, but not before. We do not deny the right of the courts to deal with the possession of the land prior to the issue of the patent, or to enforce contracts between the parties concerning the land. But it is impossible thus to transfer a title which is yet in the United States." (Marquez v. Frisbie, 101 U. S., 475.) The general doctrine is "that an officer to whom public duties are confided by law is not subject to the control of the courts in the exercise of the judgment and discretion which the law reposes in him as a part of his official function. Certain powers and duties are confided to these officers, and to them alone, and however the courts may, in ascertaining the rights of the parties in suits properly before them, pass upon the legality of their acts after the matter has once passed beyond their control, there exists no power in the courts, by any of its processes, to act upon the officer so as to interfere with the exercise of that judgment while the matter is properly before him for action. The reason for this is that the law reposes this discretion in him for that occasion, and not in the courts." (Gaines v. Thompson, 7 Wall., 352.) Astiazaran v. Santa Rita Mining Company was a suit to quiet the title to certain lands in Arizona, claimed under a Mexican grant. Congress had enacted

that the Surveyor General for the Territory should examine as to the validity of the claims and report his decision to Congress for its action. The Surveyor General made his report, recommending a confirmation of plaintiff's title, but Congress had never taken final action upon this recommendation. In refusing to quiet the title of plaintiffs under these circumstances, the Supreme Court say: "The case is one of those, jurisdiction of which has been committed to a particular tribunal, and which cannot, therefore, at least while proceedings are pending before that tribunal, be taken up and decided by any other. (Johnson v. Towsley, 13 Wall., 72; Smelting Co. v. Kemp, 104 U. S., 636; Steel v. Smelting Co., 106 U. S., 447; New Orleans v. Payne, 147 U. S., 261.) In this case Congress has constituted itself the tribunal to finally determine, upon the report and recommendation of the Surveyor General, whether the claim is valid or invalid. The petition to the Surveyor General is the commencement of the proceedings which necessarily involve the validity of the grant from the Mexican Government under which the petitioners claim title; the proceedings are pending until Congress has acted; and while they are pending, the question of the title of the petitioners cannot be contested in the ordinary courts of justice." (Astiazaran v. Santa Rita Mining Co., 148 U. S., 80.)

This being the law of the case, while the District Court of Albany County had jurisdiction to try the right of possession between the parties at that time and, in reaching its conclusion upon that question, might perhaps treat the cancelled certificate of the bank's grantor as in full force and effect and the homestead entry of Stenhoff as without any validity, yet, the title still being in the Government and the question of the disposal of it still pending and undetermined in the land office, the court had no jurisdiction to try the question of title and no jurisdiction to deprive the United States of its title and transfer it to the bank; it had no power to restore and give vitality to the cancelled certificate as one of the necessary steps in the process of obtaining title

by the bank, and it had no power to cancel and destroy the homestead entry of Steinhoff and thus arrest him in his pursuit of the title in the only tribunal through which it could be obtained, the United States Land Office. It is true that some courts have proceeded to quiet title as between private parties upon proof that all contested questions in the land office had been decided in favor of the plaintiff and he had obtained a final receipt, or certificate of purchase, although no patent had been issued. But while such a proceeding seems to disregard the power and right of the Land Department, as established in Orchard v. Alexander, 157 U. S., 372, and other cases, to cancel such certificate upon a proper notice and hearing, the cases, so far as they have come to our attention, recognize the principle which we have applied in this case, that the courts will not adjudge the title to the land until that question has been finally determined and is no longer pending in the Land Department. The decision of all contested questions in his favor and the issuance to him of a final receipt are held to entitle the claimant to a patent and to constitute title. This seems to be the view of the California court, in Potter v. Randolph, 58 Pac., 905. But the distinction is unimportant in this case. Prior to the judgment, the final receipt of the bank's grantor had been cancelled and Steinhoff had been permitted to make his entry. And subsequently to the judgment he had made his proof, obtained his final receipt and finally his patent. Very clearly, therefore, the whole matter of the sale of the land and the disposal of the Government's title was still pending and undetermined in the Land Department at the time the former judgment was rendered; and it cannot be successfully claimed that nothing remained for the land office to do except the merely ministerial duty of issuing a patent which the bank was entitled to.

Counsel for plaintiff in error cite such cases as Orchard v. Alexander, *supra,* and Caldwell v. Bush, 6 Wyo., 342, and Delles v. Second Nat. Bank, 7 Wyo., 66, in support of their view that the court had jurisdiction to render the

judgment which it did render, notwithstanding no patent had issued and the matter of the title was still pending in the land office. But in those cases only the right of possession was in litigation, and in such cases, where the right of possession does not depend upon the legal title, there is no question of the jurisdiction of the state courts.

Plaintiff in error contends that the judgment was conclusive and binding upon the parties as to the title to the land as it stood at that time; that it specifically established intact the final certificate under which the bank derived its title, and that Steinhoff could not afterwards insist upon any proceeding which had been taken by him before that time. And, in support of its contention that the court had jurisdiction to finally determine these questions and set aside the decisions of the Land Department, we are referred to Garland v. Wynn, 20 How., 6; Johnson v. Towsley, 13 Wall., 72; Shepley v. Cowan, 91 U. S., 330, and numerous other cases, in which it is held that the decisions of the Land Department are not conclusive upon the courts. But in all these cases patent had issued, the title had passed into private hands and the matters had gone from the control of the Land Department. Nothing is better settled than that, under such circumstances, the courts may determine the equities of parties properly before them, and, in doing so, may declare the illegality of acts of the Land Department and afford appropriate remedy.

This disposes, as we think, of the questions involved, and it is not necessary to consider the assignments of error in detail. No objection is urged to the method of attack upon the judgment sought to be vacated. Judgment in this case was rendered on the pleadings and no evidence was presented. The situation presented, therefore, is that Steinhoff is the owner in fee of the land in controversy under a patent from the United States; there is of record a judgment in the District Court, rendered without jurisdiction, adjudging the bank to be the owner in fee simple of the land freed from any estate or interest therein of the

plaintiff, Steinhoff, and he is perpetually, enjoined from trespassing upon it, or interfering in any way with the possession of the bank.    The effect is to enjoin him from asserting his title which was not before the court or in existence when the judgment was rendered, but has been acquired since.

Under these circumstances, the judgment of the District Court in vacating such judgment was proper, and it is accordingly affirmed.

Knight, J., and Potter, J., concur.

### ON REHEARING.

Corn, Chief Justice.

A rehearing was granted in this case upon the proposition presented by counsel for plaintiff in error that, as the District Court had jurisdiction to adjudicate the question of the right of possession at the time the original judgment was rendered and determined it in favor of the bank and no proceedings in error were instituted, no reason appears why so much of such judgment as the court had authority to render should be vacated or annulled; that, therefore, the judgment under consideration should be so modified as to leave the original judgment in force to the extent that it decreed the right of possession at that time to be in the bank and adjudged the costs against the defendant, Steinhoff.

The briefs of counsel having been specially directed to the question whether the original judgment, as a whole, was properly set aside in this action, the distinction now insisted upon in a measure escaped our attention.    Counsel for defendant in error relies upon two propositions : First, that the court was without jurisdiction to render the original judgment, and, second, that matters have arisen since its rendition which render its enforcement inequitable and unjust.    We have held that, so far as the District Court merely adjudicated the question of the right of possession at that time, it acted with jurisdiction. . That part of the

judgment is, therefore, not to be set aside upon the ground that the court was without jurisdiction to render it. Counsel contends that, as the judgment was based upon the finding that the bank had the fee simple title, which it was not competent for the court to find, the title being confessedly still in the Government, that, therefore, the judgment itself was void *in toto* and must give way. But the conclusion does not follow. The court had jurisdiction to determine the question of the right of possession between these parties and had them before it. Its judgment may have been erroneous as based upon insufficient evidence or a misconception of the law. But it is not before us and was not before the District Court upon any proceeding in error for the examination of that question.

Then, under the second proposition of defendant in error, that matters have since arisen which render its enforcement inequitable and unjust, does justice or equity require that plaintiff in error, having occupied possession and exercised control of the premises under authority of a judgment of a court of competent jurisdiction, should now, by the vacation of such judgment, be placed in the attitude of a mere intruder upon the land and a trespasser upon the rights of Steinhoff, for the reason that the latter has since acquired the title? · We think it clearly does not, unless such complete vacation should be necessary for the protection of the rights of defendant in error. And it is evident that the continuance in force of the judgment, to the extent that the court had jurisdiction to render it, cannot interfere with defendant in error in the assertion of his since acquired title and his right of possession incident to it. We find no reason, therefore, why it should be vacated.

The judgment of the District Court will be so modified as to vacate the former judgment only so far as it decrees the title to the land in the bank and enjoins Steinhoff from interfering with its possession. And as so modified the judgment will be affirmed.

We think there was reasonable cause for the proceedings

in error in this case and the request of counsel for defendant in error that attorney's fees and penalty in the way of damages be allowed must, therefore, be denied.

*Judgment modified and affirmed.*

KNIGHT, J., and POTTER, J., concur.