## WOLBOL v. STEINHOFF, ET AL.

(No. 897; Decided November 1st, 1917; 168 Pac. 251.)

Appeal and Error—New Trial—Motion for New Trial—Sufficiency of Grounds for New Trial—Preservation of Record—Public Lands—Desert Entry—Desert Lands—Cancellation of Final Land Office Certificate—Validity of Entry—Partial Reclamation of Final Entry—Decision of Land Department Refusing to Reinstate Entry—Limitation of Actions—When Statute Runs as to Recovery of Lands—Remedy of Transferee Without Notice of Cancellation of Certificate—Laches—Recovery of Land — Equitable Remedies — Trial — Discretion of Court—Action—Equitable Defenses.

1. A decision, when the trial is by the court, includes the findings, and a motion for new trial on the ground that the decision and judgment is not sustained by the evidence, is sufficient to authorize a review under the sixth clause of Compiled Statutes, 1910, Section 4601, without mentioning the findings.

2. The sixth clause of Section 4601, Compiled Statutes, 1910, is inapplicable in the assignment of specific errors of law in the trial, such, for example, as the admission or rejection of evidence, or the giving or refusing of instructions, which must be assigned under another clause of the section.

3. A motion for a new trial for insufficiency of evidence stated in the language of the sixth clause of Section 4601, Compiled Statutes, 1910, is sufficient.

4. Where the equitable title of a land entryman evidenced by his final certificate issued from the department, passed from him to another prior to proceedings for the cancellation of the entry, his grantee is entitled to legal notice of the proceedings, although he had actual notice.

5. Where a land entryman's final certificate has been cancelled by the land department without notice to his transferee or mortgagee, such cancellation may be binding and conclusive upon the entryman, if upon notice to him, but is not conclusive upon the transferee or mortgagee so as to bar him from showing the failure of the entry either by a proper proceeding in the land department before patent, or a proceeding before a judicial tribunal against one to whom a patent has been issued for the same lands.

6. A partial reclamation of lands at the time of desert entry, therefore, does not invalidate the entry.

7. The Secretary of the Interior's refusal to reinstate a desert land entry upon request of a mortgagee does not determine

the validity of the entry against such mortgagee where the application was dismissed upon other grounds. ·

8. Under Compiled Statutes, 1910, Section 4295, fixing the limitation for actions for the recovery of title or possession of lands, and Section 4303 for relief not provided for in preceding sections, at ten years after the cause of action accrues, the time does not run against defendant's right to recover public lands until a patent issued to plaintiff's predecessors.

9. Laches held not to bar defendant's right to recover public lands asserted within ten years after issuance of patent, where defendant's rights were protected until the patent's issuance by a judgment against plaintiff's predecessors.

10. Defendants in error cannot complain of refusal to separate legal and equitable issues on trial where they filed no cross-petition in error and do not complain of the judgment.

11. In an action to recover the profits of land, the court may first determine issues raised by an equitable defense and cross-petition.

12. In an action to recover profits of land, defendant may present an equitable defense without seeking affirmative equitable relief.

ERROR to the District Court, Albany County; HON. V. J. TIDBALL, Judge.

Action by Sarah Steinhoff, et al., against Katrine Wolbol, as executrix. Judgment for plaintiffs and defendant brings error. The material facts are stated in the opinion.

*Corthell, McCullough & Corthell,* for plaintiffs in error.

Wolbol succeeded to all rights of the original entryman and of Lewis and the bank and held the same at the time of the land office proceedings, but the holders of the Dean title had no notice or knowledge of the land office proceedings. The rule that a decision of the land department relating to public lands and conducted upon notice is conclusive is well settled, but subject to two exceptions: (a) Where the land officials are imposed upon by fraudulent conduct, or where they depart from their own settled rules or decision, or where there is no evidence to sustain their findings or misapply the law, their action may be reviewed by a competent court having jurisdiction; (b) where the

holder of a title or parties interested are not notified of the proceedings and do not participate in them, they are not concluded by the findings and decision of the land department, but may be vindicated in like manner in any court of equity gaining jurisdiction.   Both defenses are open to the original defendant in this case, to-wit: fraud and lack of notice.   One who complies with all the requisites necessary to entitle him to a patent is to be regarded as the equitable owner and the land is no longer open to location.   (Wirth v. Branson, 98 U. S. 118.)   Supervisory powers of the commissioner of the general land office over acts of local officers are not of an unlimited or arbitrary character and cannot be exercised so as to deprive a person of land lawfully entered and paid for.   (Cornelius v. Kessel, 128 U. S. 456.)   The courts have equitable jurisdiction to relieve against fraud or gross mistake.   (James v. Iron Co., 107 Fed. 597, 600; Howe v. Parker, 190 Fed. 738, 746, 747; U. S. v. Detroit Lumber Co., 200 U. S. 321, 337, 338; Hemmer v. U. S., 204 Fed. 898, 905; McCord v. Hill, 111 Wis. 499, 84 N. W. 27, 85 N. W. 145, 87 N. W. 481; Caldwell v. Bush, 6 Wyo. 342.)   The rule exemplified in the foregoing decision is more important and even more liberally applied to departmental proceedings than is the corresponding rule authorizing courts of equity to correct proceedings of law courts.   The land was desert in character as shown by the evidence.   (Babcock v. Watson, 2 L. D. 19, 20.)   Reclamation by conducting water upon lands is sufficient irrespective of whether ditches were constructed or not.   (Vibrans v. Langtree, 9 L. D. 419.)   There was proof of reclamation under the rule established by the department.   (D. L. E., 3 L. D. 385; In re. Ramsey, 5 L. D. 120.)   Partial reclamation at the time of entry does not invalidate the entry.   (Bickford, 7 L. D. 374.)   Vested rights relate to the state of the law at the time.   (James v. Iron Co., 107 Fed. 597, 89 Fed. 811; Howe v. Parker, 190 Fed. 738, 757.)   Dean had parted with his equitable title at the time the land office proceedings were commenced and his grantees were entitled to notice.   (U. S. v. Copeland, 5

L. D. 170, 171; Guaranty Savings Bank v. Bladow, 176 U. S. 453, 454, 455; Hawley v. Diller, 178 U. S. 476, 488, 489; Thayer v. Spratt, 189 U. S. 346, 351, 352; Whitney v. Spratt, 25 Wash. 62.) Actual knowledge does not dispense with the necessity of legal notice. (Howe v. Parker, 190 Fed. 738, 758; Delles v. Second National Bank, 7 Wyo. 66.) Wolbol has acquired the Steinhoff and Dean title since the commencement of this suit. The subject matter has been before this court in the prior cases of Laramie Bank v. Steinhoff, 7 Wyo. 464, and Laramie Bank v. Steinhoff, 11 Wyo. 290, 311, 312. For thirty years Dean and his grantees have been defending their right to this land, the title to which has been set at rest through the merger of both the Steinhoff and Dean titles in Wolbol. The question of title is no longer important, except as determining the right of Steinhoff to damages for use and possession during the period when Wolbol was holding under the judgment of the court already referred to.

*H. V. S. Groesbeck,* for defendants in error.

Matters not mentioned in the brief of plaintiff in error are waived. (Bank v. Ludvigsen, 8 Wyo. 230, 257; Phillips, et al., v. Brill, et al., 15 Wyo. 521, 527; C. B. & Q. R. R., et al., v. Lampman, 18 Wyo. 106, 118; Boswell, Admr., v. Bliler, 9 Wyo. 277.) Only matters presented by motion for new trial can be considered. (Court Rule No. 13.) The assignment of error that decision was contrary to law was insufficient. (Miller v. State, 3 Wyo. 657, 660; Syndicate Imp. Co. v. Bradley, 7 Wyo. 228, 235; Freeburgh v. Lamoreux, et al., 12 Wyo. 41, 45.) The particular error must be pointed out. (Elliott on App. Proc., Sec. 853; C. B. & Q. R. R. Co. v. Morris, 16 Wyo. 308, 319.) The assignment here is indefinite. (Boburg v. Prahl, 3 Wyo. 325; 14 Ency. Pl. & Pr., 882, 883.) A statement in the language of the statute is insufficient. (Dawson v. Baum, 3 Wash. Ter. 464.) Assignment that findings and judgment not sustained by sufficient evidence and contrary to law presents no question for review. (Ferdinand R.

Co. v. Bretz, 108 N. E. 967.) Or that verdict is against the law. (Raifesen v. Young, 167 S. W. 648, 183 Mo. App. 508.) Definite reasons must be stated. (Falloon v. Fenton, 167 S. W. 591, 182 Mo. App. 93; Crow v. Crow, 143 Pac. Rep. 689.) Under a statute like ours an assignment that the findings in the judgment of the court are not sustained by evidence and contrary to law held insufficient. (Bradford v. Wegg, 102 N. E. 845; Alexander v. Lumber Co., 154 S. W. 235; Byrd v. Vanderburgh, 151 S. W. 184; Dietz v. Barnard, 107 S. W. 766, 32 Ky. Law Rep. 1130; William Moneage & Co. v. Livingston, 43 So. 840; Elliott's App. Proc., Secs. 306, 308, 309.) Assignment should be that the verdict or finding by a court not sustained by sufficient evidence. (Hamric v. Hoover, 84 N. E. 28, 41 Ind. App. 411; Houston Co. v. Kalitta, 108 S. W. 175.) Objections should be urged to the findings of the court and not to judgment. (Elizalde v. Murphy, 103 Pac. 904; Bank v. Tregnitz, 111 Pac. 402.) Motion must specify wherein evidence insufficient. (Holland v. Canty, 137 Pac. 276, 23 Cal. App. 91.) The present motion raises only the question whether verdict authorized by any evidence. (Southern Ry. Co. v. Adams, 80 S. E. 912.) Evidence before trial court being conflicting, judgment must be affirmed. (Kester v. Wagner, 22 Wyo. 512; Evans v. Cement, Stone & Brick Co., 21 Wyo. 184; Crable & Son v. Connor, 21 Wyo. 460; Saratoga Land & Investment Co. v. Jensen, 20 Wyo. 323; Wyo. Irr. Co. v. Burroughs, 19 Wyo. 176; C. B. & Q. R. R. Co. v. McPhillamey, 19 Wyo. 426, 440.) The lands were partially reclaimed before entry. The cross-petition does not set out in full or as an exhibit all of the evidence taken before the land department; courts will not review decisions of the land department. (O'Reilly v. Moxon, 113 Pac. 486.) Except where mistake or fraud is shown. (Le Marchel v. Teagarden, 152 Fed. Rep. 662; Temple v. Osburn, et al., 106 Pac. 16; Ross v. Wright, 116 Pac. Rep. 949, 950, 951; James v. Iron Co., 107 Fed 597.) Wolbol has been guilty of laches, which should preclude equitable or other relief. The equitable defenses urged by

plaintiff in error were considered by the land department. (John J. Dean, 10 L. D. 446, 447.) The mortgagee was bound by the notice given to the entryman. (Dean case, supra.) Laches need not be pleaded. (13 Ency. Pl. & Pr. 183.) Equity will not aid one guilty of laches. (26 Enc. L. 448; United States v. White, 17 Fed. 565.) Neither naked possession of nor rejected application for public lands will enable the party to attack a patent issued to another. (Buckley v. Howe, 86 Cal. 596, 25 Pac. Rep. 132.) Laches is a good defense in equity. Abraham v. Ordway, 158 U. S. 416, 423; Hammond v. Hopkins, 143 U. S. 224; U. S. v. Martinez, 184 U. S. 441, 46 L. Ed. 632.) Fifteen years having elapsed since Steinhoff's homestead entry, the action is barred by Sections 4295 and 4293, Comp. Stats. 1910. Steinhoff being an innocent party, his entry cannot be made subject to a trust in favor of Wolbol. (Chandler v. Dunbar Co., 209 U. S. 447-453, 52 L. Ed. 881.) Suits to annul patents must be brought within six years. (6th Fed. Stats. Anno. 526.) The decision of the land department is binding upon the courts. (DeCambra v. Rogers, 189 U. S. 119, 122, 47 L. Ed. 734, 735 ; Whitcomb v. White, 214 U. S. 15-19, 53 L. Ed. 889; Sullivan v. Damon, 202 F. 285; Shank v. Holmes, 137 Pac. Rep. 871; Knight v. United Land Association, 142 U. S. 211, 35 L. D. 974; Love v. Flahive, 33 Mont. 348, 83 Pac. Rep. 882, 205 U. S. 195, 51 L. Ed. 768, 206 U. S. 356; McKenna v. Atherton, 160 F. 547; Ayres v. U. S. 42 Court of Claims, 385; Emmons v. U. S. 175 Fed. Rep. 514; Forman v. Healey, 121 N. W. 1122; Greenmayer v. Coate, 212 U. S. 434, 435, 53 L. Ed. 587, 591; Hartman v. Warren, 22 C. C. A. 38; Carson City Gold & S. Min. Co. v. North Star Min. Co., 28 C. C. A. 344; Uinta Tunnel Co. v. Greede & C. Min. & Mill Co., 57 C. C. A. 207; Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875; Knight v. U. S. Land Assoc., 142 U. S. 211, 35 L. Ed. 974; Emmons v. U. S., 175 Fed. Rep. 514.) Whether the land is desert or not desert is a question for the land department and its decision is unassailable. (Steel v. St. Louis Smelting Co., 16 Otto., 116 U. S. 447; Little

v. Williams, 113 S. W. 340; Heckman v. Mumford, 4
Alaska, 299, citing Behrends v. Goldsteen, 1 Alaska, 518;
Hart v. Delphey, 136 N. W. 702; Levre v. Amonson, 81
Pac. Rep. 71, 11 Idaho, 45; Craigie v. Roberts, 92 Pac.
Rep. 97, 6 Cal. App. 309.)  The issuance of a patent is a
judgment as to the character of the land.  (Patterson v.
Ogden, 74 Pac. Rep. 443; Wright v. Hartville, 13 Wyo.
497; 26 Ency. L. 389; 32 Cyc. 1025.)  The land decision
refusing reinstatement is conclusive.  (10 L. D. 446.)  On
the question of notice the government deals only with its
own transferees and is not required to take notice of con-
veyances after final proof.  (Caldwell v. Bush, 6 Wyo. 342.)
Dean's transferees were bound by the decision of the land
department.  (N. P. R. R. Co. v. Slaight, 205 U. S. 122.)
Wolbol's purchase after the land office proceedings and de-
cisions of this court leaves him in no better position than
the original plaintiff, he being a privy.  (2 Black on Judg-
ments, Sec. 955; Freeman on Judgments (3rd Ed.), Sec.
162; Orthwein v. Thomas, 127 Ill. 354, 11 Am. St. Rep.
159, 171.)  Wilkins, who purchased from Dean, had actual
notice of the land office proceedings.  Balch and the bank,
assignees of the Lewis mortgage, acquired interest after
hearing had been ordered; they took title sub judice.  (Cald-
well v. Bush, 6 Wyo. 342; Bank v. Steinhoff, 11 Wyo. 290.)
Where mortgagor had no title, a subsequent sale by gov-
ernment agents conveyed a good title to the purchaser.
(Easley v. Kellom, 14 Wall., 81 U. S. 279, 20 L. Ed. 890.)
Until issue of patent the legal title remained in the United
States, which dispensed with the necessity of notice to
transferee.  Hawley v. Diller, 178 U. W. 487; Guaranty
Bank v. Bladow, 176 U. S. 448, was decided prior to the
Hawley case and directly in point for defendant in error,
as is also United States v. Detroit Co., 200 U. S. 321.  The
amended answer and cross-petition is in effect a bill to quiet
title and cannot be maintained without proof of possession
and legal title in the complainant.  (Hawley v. Diller, supra;
Frist v. Sitley, 121 U. S. 552; 23 Am. & Eng. Ency. Law,
479.)  Equity courts will not intervene to set aside a de-

cision of the land department on the ground of perjury. (Cagle v. Dunham, et al., 78 Pac. Rep. 581; Greenmayer v. Coate, 88 Pac. 1054, 212 U. S. 434, 53 L. Ed. 587; Estes v. Timmons, 199 U. S. 391, 50 L. Ed. 241; U. S. v. Marshall Min. Co., 129 U. S. 579, 32 L. Ed. 734.) Plaintiff has not shown in the trial that she is entitled to the land. (Pierson v. Loveland, 16 Idaho, 628, 102 Pac. 340; So. Pac. v. Arnold, 162 Cal. 726.) Wolbol, the bank and its successor might have urged their objection to the issuance of a patent to Steinhoff, but did not do so and are bound by the patent and cannot object thereto. (Forman v. Healey, 121 N. W. 1122; Henry v. Heldmaier, 129 Ill. App. 86; Hemenway v. Thompson, 227 Ill. 146, 81 N. E. 52; Champlin v. Butler, 124 Ill. App. 41; Kohly v. Fernandez, 118 N. Y. S. 163; Hungate v. Hentzer, 111 Pac. Rep. 183, 83 Kan. 265.) The conclusions as to ultimate facts finally reached by the land department must be accepted by the courts. (Greenmayer v. Coate, 212 U. S. 434.) Lack of good faith on the part of Wolbol and the bank being apparent, their equitable defenses cannot be sustained. (Black on Judgments, 530; Roberts v. Gebhardt, 37 Pac. 782; U. S. v. Marshall Co., supra.) Authorities cited by plaintiff in error do not modify the effect of prior decisions. Steinhoff upon receiving patent was entitled to title and possession of the land from the date of his original entry on September 16th, 1890. (United States v. Detroit Co., supra.) The title to the homestead relates back to the date of homestead entry. In an action of trespass for injury will lie in the meantime. (Stoneroad, et al., v. Beck, 120 Pac. Rep. 898; Weeks v. Bridgeman, 159 U. S. 541, 40 L. Ed. 253; Moss v. Dowman, 176 U. S. 413, 44 L. Ed. 528; Stark v. Starr, 6 Wall. 402, 18 L. Ed. 925; Northern Pac. v. Townsend, 84 Minn. 152; Payton v. Desmond, 129 Fed. Rep. 2.) The occupation of Wolbol was by force of an injunction and this avails him nothing. (Sparks v. Pierce, 115 U. S. 428.) Steinhoff cannot be deprived from the use of these premises, unless his patent is set aside, before his right goes back to his first settlement. (Pool v. Baker, 23 Wyo. 539, 546.) The val-

idity of a settlement right is not affected by absence from the land in obedience to a judicial order. (Smith v. Place, 13 Land Dec. 214, 216; Kane, et al., v. Devine, 7 L. D. 532; Anderson v. Anderson, 5 L. D. 6; Arnold v. Cooley, 10 L. D. 551; Reedhead v. Hauenstine, 15 L. D. 554.) The court had no right to sever the legal and equitable issues in the case. The court could have taken the jury as an advisory one on the equity side and submitted interrogatories. The right of a jury trial is secured by statute and there does not seem to be any distinction between equity cases and common law cases. (Sec. 4452, Comp. Stats. 1910; Chapman v. Lee, 45 Ohio St. 356, 363; Brundridge v. Goodlove, 30 Ohio St. 374, 376.)

POTTER, CHIEF JUSTICE.

This action was commenced on October 5, 1903, by Philip A. Steinhoff against Mads Wolbol to recover as damages the alleged value of the hay and grass grown upon a tract of land described as the southwest quarter of section 11, in township 15 north, of range 78 west of the sixth principal meridian, situated in the County of Albany, in this state, and the issues and profits of said land, alleged to have been taken and converted by the defendant to his own use during the period from on or about August 18, 1890, to August 3, 1903.

The petition alleges that the plaintiff was in possession of the land, and had been entitled to the exclusive possession since January 1, 1890, through his lawful entry thereon on that date, his lawful homestead entry on September 16, 1890, a receiver's final receipt upon his final proof as such homestead entryman on April 20, 1897, and a patent issued to him by the United States on December 15, 1897; that from about August 18, 1890, until on or about August 3, 1903, the defendant was in possession of the land, having ejected the plaintiff therefrom and prevented him from going upon or using the same by certain injunction orders wrongfully and unlawfully granted on or about August 14, 1890, and March 21, 1892, in an action brought by the Lar-

amie National Bank against the plaintiff, "at the instance,
request and instigation of the said defendant." That said
injunctions were vacated by the Supreme Court on August
3, 1903, in an action wherein the said bank was plaintiff
in error and the plaintiff was defendant in error, and there-
after the plaintiff again entered into possession of the land.
It also alleges the yearly value of the hay and grass, issues
and profits during the period of defendant's possession to
have been one thousand dollars, and judgment is prayed for
thirteen thousand dollars.

Issues were not joined for trial until January 14, 1907,
when a reply was filed to an amended answer and cross-pe-
tition filed on February 10, 1906. The plaintiff having died
on January 22, 1907, an order was entered on March 28,
1907, reviving the action in the name of his widow and
daughter as his heirs and the administrator of his estate as
plaintiffs and against the same defendant. Before the trial
also, and on or about July 11, 1915, the defendant died, and
the one first appointed administrator of the Steinhoff estate
having in the meantime resigned, and another having been
appointed, an order was entered on November 22, 1915,
upon a showing of the facts and by consent and stipulation,
reviving the action in the name of Willis Jensen as admin-
istrator of the estate of the original plaintiff, Sarah Stein-
hoff, and Margaret Wilhelm, his widow and daughter, re-
spectively, as plaintiffs, and in the name of Katrina Wolbol,
executrix of the last will and testament of Mads Wolbol,
deceased, as defendant. The cause came on for trial on
June 12, 1916, upon the issues raised by certain equitable
defenses and an alleged cause of action for equitable relief
set up in the amended answer and cross-petition, leaving
the issues of law raised by the pleadings for a future trial
and determination, if necessary; a motion filed by the de-
fendant that the said equitable issues be first tried having
been granted by the District Court. Upon such trial, with-
out a jury, there was a general finding and a judgment for
the plaintiffs. The case is here for the review of that judg-
ment on error.

The equitable issues aforesaid are described in the motion and order 'for a separate trial thereof and in the judgment as the issues raised upon the equitable defenses and causes of action set up in the amended answer and crosspetition. But it seems to be conceded that the only part of said answer involved and considered on the trial, and to be here considered, is the paragraph or sub-division numbered 6, alleging certain facts "for a further defense to the plaintiff's petition and to each of the causes of action therein, and by way of cross-petition." For convenience that pleading will be hereinafter referred to as the answer, and our reference to its averments will be confined to the numbered paragraph or sub-division aforesaid.

Said answer alleges in substance and effect that the defendant is in possession of the land claiming an estate or interest therein adverse to the plaintiff; that he is the full equitable and beneficial owner thereof, having acquired by deed the equitable title of one John J. Dean under a final certificate of purchase issued to the latter upon his making satisfactory proof in the United States Land Office at Cheyenne on June 24, 1884, that he had reclaimed the land pursuant to his lawful entry thereof on December 11, 1883, under the Desert Land Laws. That after the issuance of said certificate, and on June 30, 1884, said entryman conveyed the land to one Alfred T. Wilkins by deed duly recorded on August 6, 1884, in the office of the register of deeds of the county in which the land was situated. That thereafter, on September 20, 1884, said Wilkins mortgaged the land to one Thomas E. Lewis, said mortgage being duly recorded on October 7, 1884, in the office of said register of deeds. That on September 5, 1887, said Lewis, for value, assigned said mortgage to one Henry G. Balch, who, on the same date, assigned it to the Laramie National Bank; and that said bank on March 10, 1890, became the purchaser of the land upon a sale under said mortgage and a court decree foreclosing the same, and thereafter, on July 7, 1890, conveyed the land to the defendant, who ever since has remained the owner thereof. That after the transfer and

recording of the conveyance by Dean to Wilkins and the latter's mortgage to Lewis and the recording thereof, the certificate of purchase issued to Dean was ordered cancelled by the commissioner of the general land office upon a hearing of charges made in the report of a special agent of the Land Department that the land was not desert in character when Dean's entry was made and that he had constructed no ditches thereon; that said hearing and cancellation was without notice to any of Dean's grantees or successors in title, who had been and were in the exclusive possession of the land to the knowledge of the special agent and as reported by him to the said commissioner; and that the decision cancelling the certificate was the result of fraud, false testimony, the suppression and concealment of evidence, and misapplication of the law through the disregard of and departure from certain settled rules of decision of the Land Department stated in the answer; certain facts being alleged to show the alleged fraud and the evidence alleged to have been suppressed and concealed. Said answer further alleges that said entryman had fully reclaimed the land and was entitled to a patent pursuant thereto and his certificate; that the cancellation of the certificate was illegal and void; that plaintiff by his homestead entry acquired no right and by his patent the bare legal title in trust for the defendant. And it is prayed that the defendant take nothing by his action; that defendant be declared the full equitable and beneficial owner and entitled to possession; that the plaintiff be adjudged, with respect to the legal title, a trustee for defendant, and be required to convey said title to him; that plaintiff be enjoined pending the action and perpetually thereafter from interfering with defendant's possession or asserting any right or title to the land, and such other relief as may be proper.

It is sufficient in stating the issues to say as to the reply and answer to the said sixth defense and cross-petition that it contains a general denial and other paragraphs pleading the statute of limitations, laches, estoppel, and former adjudication. A supplemental answer to the cross-petition

was filed by leave of court on March 6, 1916, alleging that
on May 8, 1912, the defendant acquired by warranty deed
the title formerly in the plaintiff under his patent; that the
land was sold and conveyed by the administrator of the
Steinhoff estate, under order of court, on May 10, 1909,
to one Ward B. Ash, and by the latter conveyed to one
Harry D. Richardson, who conveyed it on January 6, 1910,
to one Charles Olson, by whom it was conveyed to the de-
fendant. There was no reply to this supplemental pleading
and the facts therein alleged stand admitted.

Certain facts were agreed to upon the trial by stipula-
tion. It was thus agreed that John J. Dean, being lawfully
qualified, made desert entry for the land and final and satis-
factory proof of its reclamation by him on the respective
dates stated in the answer, paying to the receiver of the
land office twenty-five cents per acre at the time of filing his
declaration and the further sum of one dollar per acre at
the time of making his final proof, and that on the date of
said proof a final certificate of purchase was issued to him
in the usual form. That thereafter said Dean and wife, for
a valuable consideration then paid to him, conveyed the land
by warranty deed to one Alfred T. Wilkins, who, with his
wife, thereafter conveyed the same by a mortgage deed to
one Thomas E. H. Lewis, in consideration of the sum of
$5,571.00 then and there loaned to Wilkins by Lewis; the
said deed to Wilkins and mortgage to Lewis having been
executed and recorded on the respective dates thereof as
stated in the answer. That said Lewis on September 5,
1887, for a valuable consideration, sold, transferred and as-
signed the said mortgage and the debt secured thereby to
Henry G. Balch, who thereafter, for a valuable considera-
tion, sold, transferred and assigned the mortgage and debt
to the Laramie National Bank. That thereafter, in the Dis-
trict Court for the county in which the land was situated,
the foreclosure and sale of the land under said mortgage
were ordered and adjudged, and the bank became the pur-
chaser at said sale, for value, whereby all the right, title
and interest which the said John J. Dean or Alfred T. Wil-

kins had or could convey at any time were vested in said bank; and on July 7, 1890, the bank by warranty deed conveyed the land to Mads Wolbol, the original defendant, who entered into possession of the land the same day. That on September 3, 1886, upon the report of a special agent of the general land office, a hearing was had by direction of the commissioner thereof before the register and receiver of the local land office at Cheyenne, at which time and place said Dean was notified to appear and show cause why his entry should not be cancelled, and at such hearing said Dean appeared and proofs were submitted in behalf of the government and of Dean, upon which proofs on August 16, 1887, the commissioner decided that Dean's original declaration and final proof were false and fraudulent, on the ground that the land was not desert in character at the date of his entry and that he had constructed no ditches thereon; and thereupon the commissioner held said entry for cancellation and directed the register and receiver aforesaid to cancel the same. That Dean appealed from the commissioner's decision to the Secretary of the Interior, by whom said decision was affirmed on November 2, 1888, and thereafter Dean made application to re-instate the entry, which was dismissed by the commissioner on April 25, 1890, and no appeal was taken therefrom. That on November 9, 1888, pursuant to the commissioner's said decision and direction, the register and receiver of the local land office declared Dean's entry to be cancelled, so marked the same upon the plats and records of said office, and declared the land to be open to entry under the general laws of the United States. That on January 10, 1889, one Galusha B. Grow, being a duly qualified entryman and the assignee of Alfred T. Wilkins for the benefit of creditors, filed a timber culture entry of said land, which entry was thereafter contested by Philip A. Steinhoff, and upon a hearing of that contest said entry was cancelled by the commissioner of the general land office on August 19, 1890, whereby said Steinhoff was awarded the preference right of entry, no appeal being taken from the decision in said contest. That on De-

cember 10, 1889, against the will and without the consent
of the Laramie National Bank, it then claiming to be the
owner of the land, the said Steinhoff went thereon with ma-
terials for a dwelling house, erected a dwelling house there-
on and resided therein on the land until on or about August
14, 1890, when an order of injunction was granted restrain-
ing him from further trespassing or remaining on the land
or interfering with the possession thereof, in an action
brought against him by the said bank; said injunction con-
tinuing in force until August 3, 1903, when it was vacated
by the Supreme Court of the state in a new action brought
by Steinhoff against the bank  That on September 16, 1890,
said Steinhoff made homestead entry for the land, and after
making final proof, notwithstanding said injunction, received
a final receipt which was duly recorded in the office of the
register of deeds of Albany County on June 9, 1897, and on
December 15, 1897, a patent for the land was granted and
issued to him from the United States, which was recorded
in the office of said register of deeds on January 18, 1898.
That Steinhoff's final homestead proof was accepted by the
commissioner of the general land office with full knowledge
of said injunction.   That except the report upon which a
hearing as to the cancellation of the Dean entry was ordered
no protest or contest was at any time raised or made against
said entry, and that there is no adverse claim originating
prior thereto.  That when said hearing was ordered Wilkins
was in possession of the land in controversy, resided upon
adjoining lands, and had actual knowledge of the proceed-
ings in the land office, though no notice was served upon
him.   That Wilkins, Lewis and Balch were each without
any notice or knowledge that the entry, proof or certificate
of Dean was fraudulent or against or contrary to law, or of
any fact or facts in any wise affecting the validity of his
entry or title, excepting the settlement and entry of Stein-
hoff, and that no fraud on the part of either Wilkins, Lewis,
Balch, or the bank, has been alleged or found on investiga-
tion by a government agent or otherwise, and that neither
Lewis, Balch nor the bank had any notice of the hearing

aforesaid or the proceeding for the cancellation of the Dean entry.

A certified transcript of the evidence taken upon the hearing in the land office upon which the Dean entry was cancelled, including the special agent's report, was introduced by the defendant, together with other evidence in support of the averments of the answer impeaching that hearing and the action of the land department cancelling the entry for fraud and on the other grounds stated. Also evidence by several witnesses acquainted with the land prior and subsequent to the Dean entry and while it was pending to show the desert character of the land at the time of said entry and that it had been reclaimed by Dean when his final proof was made. From the special agent's report, which was dated at Cheyenne, September 25, 1885, it appears that said agent stated therein that the land was then owned and controlled by said Wilkins, that he had purchased it from Dean, and that he was the present claimant and had been in possession of the land about thirteen or fourteen months, and in the report also the postoffice address of Wilkins was stated—a place shown by the report to be in the immediate neighborhood of the land, and it was also stated that he was the postmaster there.

The defendant also introduced in evidence a letter addressed to Dean by the receiver of the local land office dated May 14, 1886, containing a copy of the commissioner's letter of May 4, 1886, holding the Dean entry for cancellation and requiring the "claimant" to be notified of said action and informed of the nature and substance of the special agent's report and that he would be allowed sixty days in which to appeal or apply for a hearing to show cause why his entry should be sustained, and that failing to appeal or show cause for sustaining the entry the same would be finally cancelled. And it appears that the hearing aforesaid was had upon Dean's application, and also that in the testimony of the special agent given at the hearing he referred to Wilkins as "the present owner of the land," and stated that Dean had conveyed the land by deed dated July 30, 1884—the

date, it will be observed, of the deed to Wilkins. It thus appears that the commissioner and the land department were notified that the land had been conveyed to Wilkins and that he was in possession, and that the fact was also made known to the officers of the local land office at the time of the hearing.

Portions of the record in certain judicial proceedings involving the land in controversy and relating to the injunction orders referred to in the pleadings were received in evidence, some parts thereof being introduced by the defendant and others by the plaintiffs. From this evidence it appears that on March 15, 1890, the Laramie National Bank brought an action in the District Court in Albany County against Steinhoff to quiet its title to the land and enjoin the defendant from trespassing upon it; the bank alleging that it was seized in fee simple deriving its title under the final certificate issued to Dean, and certain mesne conveyances whereby all of Dean's right and title had become vested in the bank. It also alleged that defendant claimed a cancellation of the certificate, and that he had a preference right to settle upon and make entry of the land. Steinhoff's answer and cross-petition denied the averments of the petition as to the bank's title, and alleged that Dean's entry was fraudulent, that the same and his certificate had been cancelled, and that the defendant had entered upon the land under the homestead laws. And by a supplemental answer defendant alleged his making of a homestead entry on September 16, 1890. The cause was tried and determined in said court on March 21, 1892, the defendant having in the meantime been enjoined from interfering with the plaintiff's possession pending the action. By the judgment therein it was found that the plaintiff bank was then and at the time of the commencement of the action seized of the land in fee simple and in actual possession thereof, deriving its title under a final certificate of purchase issued by the receiver of the U. S. land office at Cheyenne, Wyoming, to one John J. Dean, grantor of the plaintiff; that the action of the register and receiver of the local land office and the

commissioner of the general land office in attempting to cancel said certificate did not affect plaintiff's title, but that said certificate was still in force; that the defendant Steinhoff was without right, title or interest in the land, and that his entry and trespass thereon was wrongful and unlawful. And it was ordered and adjudged that the plaintiff bank was the owner in fee simple of the land as against the said Steinhoff, and all persons acting in aid of him, be perpetually enjoined and restrained from trespassing upon the land or interfering with the possession of plaintiff or its assigns.

It is conceded that there was no appeal from that judgment, and it appears to have remained in full force and effect until vacated in part by an order of this court on August 3, 1903, upon the final determination on error of a later action brought by Steinhoff against the bank to vacate the judgment. That action was commenced in the District Court on September 23, 1899, said Steinhoff, as plaintiff, alleging, among other things, the granting of the temporary injunction in the former action, the entering of the judgment therein, the subsequent final proof by Steinhoff and the issuance to him of a final homestead receipt followed by the issuance of the patent; that the facts of such final proof and the issuance of the patent were not a part of the issues in the former cause, but new matters arising since the entry of said judgment. And it was prayed that the judgment be opened, modified and vacated, and for such other and further relief as might be proper. The cause was heard upon a demurrer to the petition, which was overruled, and the defendant bank electing to stand upon its demurrer a judgment was rendered vacating the judgment, and upon proceedings in error in this court that judgment was modified by vacating only so much of the former judgment as decreed the title to the land in the bank and enjoined Steinhoff from interfering with its possession, and went beyond determining the right of possession at the time and awarding costs, and as so modified the judgment was affirmed.

A preliminary question of practice is raised by defendants in error by challenging in their brief the sufficiency of the

motion for new trial to authorize a consideration and review of the evidence. The objection is to the form of stating the first ground of the motion, the only one discussed in the brief of plaintiff in error, viz.: "The decision and judgment.is not sustained by sufficient evidence and is contrary to law." It is contended that its language is too vague and indefinite, without stating wherein the decision or judgment is not sustained by the evidence or is contrary to law; and it seems to be contended also that the statement is insufficient because attacking merely the decision and judgment without mention of the findings. The latter point is clearly not well taken. The statute (Comp. Stat. 1910, Sec. 4601) prescribes, among other causes for a new trial: "6. That the verdict, report or decision is not sustained by sufficient evidence or is contrary to law." This motion makes that charge against the decision as well as the judgment, the word employed in said statute to indicate a determination by the court as distinguished from the verdict of a jury or the report of a referee or master. The decision, when the trial is by the court, necessarily includes the findings, and that seems to be the theory of the statute, for in the first part of the section it is declared: "A new trial is a re-examination　*　*　*　*　of an issue of fact, after a verdict by a jury, a report of a referee or master, or a decision by the court." The section then provides that the verdict, report or decision shall be vacated and a new trial granted on the application of the party aggrieved for any of the causes therein specified materially affecting the substantial rights of such party, following which appears among the other stated causes the sixth clause above quoted.

In Ohio, from which state our Code was taken, the language of a motion was held sufficient as a substantial statement of the ground authorized by the sixth clause aforesaid which alleged merely that the "judgment" is not sustained by sufficient evidence and is contrary to law. (Buckeye Pipe Line Co. v. Fee, 62 O. St. 543, 57 N. E. 446, 78 Am. St. Rep. 743.) Of course, under said clause, the only questions to be considered are those relating to the sufficiency

of the evidence and the law applicable thereto. Specific errors of law in the trial, such, for example, as the admission or rejection of evidence or the giving or refusing of instructions, are not covered by that clause; they come under another clause of the section.

In support of the main contention as to the motion counsel cite cases decided by this court to the effect that a mere general statement of errors of law occurring upon the trial is insufficient. But in those cases the court was considering the eighth clause of the section aforesaid, which specifies as a ground for new trial: "Error of law occurring at the trial, and excepted to by the party making the application." This court has not held that stating the ground specified in the sixth clause in the language of the statute is insufficient. On the contrary, our decisions, so far as they touch the question, have been to the contrary. And we think that form of stating said ground in a motion for new trial has been the one generally followed in this state, and usually, we believe, without being objected to or questioned as too vague or indefinite.

In Boburg v. Prahl, 3 Wyo. 325, 23 Pac. 70, the motion charged: (1) Irregularity in the proceedings by which the plaintiff was prevented from having a fair trial. (2) That the decision and judgment of the court is not sustained by sufficient evidence and is contrary to law. * * * (4) Error of law occurring at the trial and excepted to by the plaintiff. Other grounds were stated not material here. The court, in the opinion by Chief Justice Van Devanter, held that the first and fourth grounds of the motion were too general and indefinite for the reason that the irregularity charged in the first and the error complained of in the fourth should have been clearly designated. That, however, was not said of the second or other grounds of the motion, but they were considered and held not well taken, for the reason that the petition was fatally defective, and the evidence conflicting. And it is to be observed that the language of the second ground was the same as the first ground of the motion in this case. In Adams v. Smith, 11

Wyo. 200, 70 Pac. 1043, it was contended that the motion was insufficient for a review of the evidence. The form of the motion in that case is stated in the opinion. In concluding the discussion of the question, the court said: "Moreover, the motion in the case at bar charges that the findings referred to, as well as the judgment, are against and contrary to law; in this respect using the language of the statute; and it is argued that as a matter of law the evidence is insufficient to sustain the judgment. We think the motion sufficiently presented to the trial court the questions discussed on this appeal." In the Ohio case, above cited, the court concluded its discussion of the point there presented by saying that the motion should be held sufficient to all intents and purposes. (See also 1 Bates Pl. Pr. Par. & F., p. 449.) We think the motion in this case sufficiently stated the grounds for new trial specified in the sixth clause of the section.

Cases are cited from other states as holding to the contrary. But most of them were evidently decided under a statute different from our own, and in some the reasons given would not apply under our statute. The California case cited (Crow v. Crow, 168 Cal. 607, 143 Pac. 689) is not much in point, but it cites the statute, which is also referred to and quoted in the earlier case of DeMolera v. Martin, 120 Cal. 547, 52 Pac. 825. It provides that when the ground of the motion is the insufficiency of the evidence to justify the verdict or other decision, the statement shall specify the particulars in which such evidence is alleged to be insufficient, and that if no such specification is made, the statement shall be disregarded on the hearing of the motion. The Indiana cases cited do not hold it necessary to state the particulars wherein it is claimed that a verdict or decision is contrary to law or not sustained by the evidence, but the adjudged defect of the motion in those cases was in the use of the words "finding" or "judgment," or both, instead of "decision"; thus differing from the Ohio case of Buckeye v. Fee, supra, in that respect. In most of the other cases cited the general charge that the verdict or

decision is against the evidence, or the weight of the evidence, or not sustained by sufficient evidence, is held to be sufficient, when charged in the language of the statute, but in a few cases it is held insufficient to state that the verdict, decision, or judgment is contrary to law without stating the particulars on which the charge is based, and it is usually so held, for the reason stated in the Kentucky case of Dietz v. Barnard, 107 S. W. 766, viz.: "It calls the attention of the court to no particular error, and the lower court should not be required, upon such an indefinite statement, to spend its time and possibly exhaust its patience in reviewing its action during the entire trial to see if any step has been taken in the wrong direction. Fairness * * * * requires that the complaining party should indicate * * * * the particular error upon which he bases his complaint." But such a reason is not applicable under our statute to an averment that the decision is contrary to law, since, as above stated, such a charge does not involve particular rulings during the trial, but whether the verdict or decision, upon all the facts or evidence upon which it is rendered, is contrary to law; the statute having, in the eighth clause of the section, provided a cause under which particular errors of law occurring upon the trial may be specified as ground for new trial.

In our view of the case it is unnecessary to consider the sufficiency of the evidence to show the alleged fraud in the cancellation of the Dean entry and certificate or whether upon the facts then before the land department the law was misapplied. That might have been necessary if the right of the defendant depended upon establishing the invalidity of the cancellation as against Dean, or that he was not concluded thereby. But his equitable title evidenced by the certificate had passed from him to another by his conveyance aforesaid before any action or proceeding to cancel the entry. The report of the special agent, the order thereon holding the entry for cancellation, the hearing and the commissioner's decision, all occurred after Dean had sold and conveyed the land to Wilkins, and the latter had mortgaged

it to Lewis, and when those conveyances were on record in the proper county office and Wilkins was in possession under his deed; and at the time of the affirmance of the commissioner's decision by the Secretary of the Interior, the bank aforesaid had become the owner of the mortgage. And no notice of the hearing or proceedings was given either to Wilkins, Lewis or the bank, or Balch, the first assignee of the mortgage, and neither of them, except Wilkins, had any notice or knowledge of the proceedings, nor did either know of any fact affecting adversely the entry, proof or certificate.

As declared and settled by the Supreme Court of the United States, the rule is that where such a final certificate has been cancelled by the land department without notice to the entryman's transferee or mortgagee, the cancellation, though it may be binding and conclusive upon the entryman, if upon notice to him, is not conclusive upon such transferee or mortgagee so as to bar him from showing the validity of the entry, either by a proper proceeding in the land department before the issuance of a patent, or a proper proceeding before a judicial tribunal against one to whom a patent has been issued; but such cancellation, binding upon the entryman, destroys the effect of the cancelled certificate as prima facie evidence of the right to a patent, and it cannot be used by the transferee or mortgagee as prima facie evidence of such right. He is, however, permitted to show the validity of the entry by other evidence. (Guaranty Savings Bank v. Bladow, 176 U. S. 448, 20 Sup. Ct. 425, 44 L. Ed. 540; Thayer v. Spratt, 189 U. S. 346, 23 Sup. Ct. 576, 47 L. Ed. 845.) In the case last cited the court said:

"It has been held in this court, in Guaranty Savings Bank v. Bladow, 176 U. S. 448, 20 Sup. Ct. 425, 44 L. Ed. 540, and Hawley v. Diller, 178 U. S. 476, 488, 20 Sup. Ct. 986, 44 L. Ed. 1157, that a cancellation of a certificate of entry was not conclusive as against a transferee who had no notice and no opportunity to be heard upon the question of the original validity of the entry, but that it left the transferee without the right to use the entry certificate as prima facie evidence of the validity of the entry or of his subsequent

claim. The transferee is, however, left free to prove the validity of the entry by any means other than the certificate. Although the assignment or conveyance of the certificates did not transfer the legal title to the lands described therein, yet the transferee or grantee thereby became posssed of an equitable interest in the lands which could not be taken from him without some notice. The character of the certificates as a mere means of evidence could be and was destroyed, but the transferee was nevertheless not thereby deprived of his right to show the validity of the former entry."

And in that case a defendant holding under a certificate transferred before its cancellation, who had not been notified of the proceeding to cancel it, was held entitled to a decree declaring that the plaintiffs holding under a patent issued upon a subsequent entry held the legal title in trust for the defendant and directing them to issue a deed conveying such title to the defendant, or in default of such deed that the decree should stand and be treated in place thereof, the evidence offered by the transferee being held sufficient to show the validity of the original entry. The right of a mortgagee without notice of the proceedings in the land department was considered in Guaranty Savings Bank v. Bladow, and the court said that, although conclusive as to the entryman upon all questions of fact, if made after notice to him, the cancellation would not be conclusive upon a mortgagee, if made without notice to him and with no opportunity on his part to be heard: "That is, it would not prevent the mortgagee, before the issuance of a patent, from taking proceedings in the land department, and therein showing the validity of the entry, or from proceeding before a judicial tribunal, against the patentee, if a patent had already issued, and therein showing the validity of the entry; such proof in each case would, however, have to be made by evidence other than the certificate which had been cancelled."

That the land had been conveyed to Wilkins by Dean was made known to the commissioner and the land department by the report of the special agent and also by his testimony

at the hearing. And by his report the commissioner and land department were also informed of the postoffice address of Wilkins, that he was in possession of the land, and that Dean lived in Denver. By the rules and decisions of the land department he was entitled to notice (see Flemming v. Bowe, 13 L. D. 78; U. S. v. Newman, 15 L. D. 224), and the fact that he had actual knowledge of the proceedings is not, we think, material. By the land department decisions about the time of these proceedings such actual knowledge without due service of a notice was held to be insufficient. (Milne v. Dowling, 4 L. D. 378; Miller v. Knutsen, 4 L. D. 536; Crowston v. Seal, 5 L. D. 213; U. S. v. Richardson, 5 L. D. 253.) In Milne v. Dowling, decided February 10, 1886, Secretary Lamar said: "The mere fact that a claimant has knowledge of a pending contest against him does not bring him into court, and does not render it incumbent upon him to defend his claim; for the local office has no right to cancel his claim without first obtaining jurisdiction over him, and that they can only obtain in the manner pointed out by the law and the regulations." In Crowston v. Seal, decided October 30, 1886, and the other cases cited, the same principle was stated.

But if that view as to the effect of the actual knowledge of Wilkins of the proceedings to cancel the Dean entry should be incorrect, it is clear that Lewis, his mortgagee, who was without any notice whatever, was not concluded by those proceedings, so as to prevent him from showing the validity of the entry and his claim, and that the original defendant holding under a warranty deed from the purchaser at the foreclosure sale, thereby succeeding to the equitable title and right of the mortgagee, would not be prevented in a proper proceeding against the patentee to show the validity of the entry, and thus that the patent title was held in trust for him.

We think the evidence in this case sufficiently shows the validity of the entry, and without substantial conflict. That the land was originally desert in character and was reclaimed by Dean is clearly established by the evidence. The

evidence at the hearing in the land office is not in the case for consideration upon those points; its only purpose and effect in this case is to show the evidence upon which the land department acted in cancelling the entry. It is, however, contended that the land was reclaimed prior to the date of Dean's entry in December, 1883, and therefore not then subject to entry as desert land. We do not so understand the evidence. It does show a partial reclamation in 1883 prior to the entry; that in that year Dean conducted water upon the land from a stream running through the northeast corner and cut from a part of it from 20 to 30 tons of hay. But it is also shown that he irrigated the land in 1884, having constructed dams and ditches, using therewith a natural channel or so-called dry ditch on the land to bring the water upon and over practically the entire tract, except a rocky strip of about ten acres not capable of cultivation; and that in that year the land produced about 75 tons of hay, the usual annual crop thereafter, at least, for several years. And, although the hay was cut that year by Wilkins, who purchased the land on July 30 of that year, the necessary irrigation work must have been done before that date, and most of it before Dean's final proof the latter part of June. These facts, we think, clearly show the reclamation of the land by Dean at the time of his final proof, commenced in 1883, but not completed so as to substantially change the desert character of the land, within the meaning of the desert land law, until after the date of his entry. That a partial reclamation at the time of a desert entry does not invalidate it was settled by a decision of the Secretary of the Interior respecting a tract adjoining the land in controversy, viz.: In re. Perry Bickford's Entry, 7 L. D. 374.

Although not in the evidence in this case, defendants in error by their brief have called our attention to the fact, as shown by a decision of the Secretary of the Interior, on April 12, 1890 (10 L. D. 446), that the bank applied for the reinstatement of Dean's desert land entry, and that said application was denied. We doubt whether the matter is presented in form to be considered. But, in our opinion,

it would not materially affect the rights of the defendant in
this case, for the reason, if no other, that the facts concern-
ing the validity of the Dean entry were not considered in
that decision.   It appears thereby that the bank's applica-
tion for reinstatement was dismissed, because it did not
appear when notice of the decision was received by Dean
or the bank, so as to make it clear whether the application
was filed within the period prescribed by the Rules of Prac-
tice, and on the further grounds that the application was
not accompanied by an affidavit that it was made in good
faith and not for the purpose of delay, and that it contained
no specifications of error, further than the general state-
ment that Dean had fully reclaimed the land and in all re-
spects complied with the law; and that, it not appearing
that the mortgagee had filed in the local office a statement
under oath showing its interest in the pending entry and had
the same noted on the records of the office, thereby entitling
it to notice of any adverse action, it was bound by notice
given the entryman and concluded by the trial upon such
notice; the decision in the latter respect seeming in conflict
with the rule settled by the Supreme Court of the United
States in the cases above cited, if intended to deny the right
of a mortgagee without notice of the land office proceedings
cancelling an entry to show its validity in a proper proceed-
ing before or after the issuance of a patent.

It is contended that the defendant's right to equitable or
other relief was lost through laches and the running of the
statute of limitations, and these matters are pleaded in the
plaintiff's reply.   The argument as to the statute of limita-
tions is directed chiefly to its effect upon the question of
laches, but we understand it to be also insisted upon as a
bar to defendant's alleged cause of action and the consider-
ation of the facts alleged as a defense.   The provisions of
the statute relied on are found in Sections 4295 and 4303,
Compiled Statutes, 1910.   The period of limitation pro-
vided by each section is ten years after the cause of action
accrues; Section 4295, relating to an action for the recov-
ery of the title or possession of lands, and Section 4303, to

an action for relief not provided for in the preceding sections.

But assuming either section to be applicable, directly or by analogy, it would not bar the right to equitable relief or the defense upon the facts, for the ten-year period of limitation had not expired when the original answer was filed, January 17, 1905, alleging the facts aforesaid, nor, indeed, when the amended answer was filed, February 10, 1906. Plaintiff did not have the legal title until December 15, 1897, the date of the patent, less than eight years prior to the filing of the original answer and less than nine years prior to the filing of the amended answer. And his final certificate upon making homestead proof was not issued until April 20, 1897, also less than ten years before either the original or amended answer was filed.

The rights of the parties upon the facts existing prior to the issuance of said certificate, if not also prior to the patent, including Steinhoff's original homestead entry, were involved and determined in the action brought by the bank in 1890 resulting in the judgment of March 21, 1892, adjudging the title and right of possession in the bank and enjoining Steinhoff from interfering with such possession. And Wolbol, the bank's grantee, protected by that judgment, having continued in possession thereafter until the patent was issued, there was no necessity or reason for a subsequent action while the legal title remained in the United States. It appears, inferentially at least, that he continued in possession after the patent was issued and until a short time before the present suit was commenced, except for a comparatively brief period during which his possession was interrupted or interfered with by Steinhoff, who, upon receiving his patent, went on the land seeking to regain and hold possession, whereupon, by a proceeding in the former action, he was cited for contempt, found guilty, ordered to make restitution, and enter into a personal obligation by bond that he would not again violate the injunction. The action of Steinhoff to vacate said judgment was

then·brought, resulting in its vacation in part as aforesaid, on August 3, 1903.

The judgment was vacated to the extent that it decreed title in the bank, on the ground that the legal title was then· in the United States, and further vacated so far as it enjoined Steinhoff from interfering with the possession of the premises, because of his having subsequently acquired the legal title and to enable him to assert the same.  But the judgment was not disturbed so far as it determined the right of possession and enjoined interference therewith prior to the issuance of patent conveying the legal title.' On the contrary, it was held by this court in disposing of the matter that the District Court had power to try and determine the right of possession and to make the necessary orders to enforce its judgment; that it had the parties to that controversy regularly before it, and, so far as the judgment found the right of possession and enjoined the defendant from interfering with such possession, that it was clearly within the court's jurisdiction.   (See Laramie National Bank v. Steinhoff, 11 Wyo. 290, 71 Pac. 992, 73 Pac. 209.)

The fact that the bank or Wolbol did not contest the Steinhoff homestead entry in the land office is not important on the question of laches.   Their right as against that entry was asserted and sustained in the action aforesaid, and until it became necessary to challenge the legal title in another after passing from the United States, or the alleged and adjudicated right of possession under the Dean certificate was interfered with, there could be no laches on defendant's part in relying upon the judgment in the absence of further proceedings questioning or endangering his alleged title or right to possession.   The matter was again contested in the action to vacate the judgment, wherein the bank, the sole defendant, defended on the ground that the validity of Steinhoff's original homestead entry had been submitted to the court in the former action and determined adversely to him, and that his patent was based

wholly on that entry. We can see no reasonable ground for holding the defendant guilty of laches.

It is further contended that the court had no right to separate the legal and equitable issues for trial, and, for that reason, that the proceeding in error should be dismissed. If that method of procedure was erroneous it would not, in our opinion, justify a dismissal of the error proceeding. Nor do we understand that the defendants in error are in a position here to complain of that action, although they objected and excepted to it in the trial court; they have filed no cross-petition in error and are not complaining of the judgment. (Johnson v. Golden, 6 Wyo. 537, 48 Pac. 196; Hanna v. Barrett, 39 Kan. 446, 18 Pac. 497; and see Shinkle v. Bank, 22 O. St. 516; Bundy v. Ophir Iron Co., 35 O. St. 80.) But we think it was within the power of the court to first try and determine the issues upon the equitable defense and cross-petition, and that it was proper in this case. (38 Cyc. 1270; 7 Ency. Pl. & Pr. 810; Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800; Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482; Massie v. Stradford, 17 O. St. 597; Taylor v. Leith, 26 O. St. 426; Sheeful v. Murty, 30 O. St. 50.) If such issues were triable by a jury, as suggested in the brief of defendants in error, the record does not show a demand for a jury trial as required by statute to avoid a waiver thereof (Comp. Stat. 1910, Sec. 4514); and the objection could not therefore be considered even if the parties were in a position to complain of the failure to call a jury.

The only other question necessary to consider is the effect upon the equitable issues of the defendant's acquirement of the legal title after filing his answer and before the trial. It is contended by defendants in error that such issues were thereby eliminated, and that the proceeding in error should be dismissed on that ground. Although the conveyance of the legal title to the defendant before the trial made unnecessary a decree declaring such title to be held in trust for him and directing that it be conveyed to him, it does not follow that he was entitled to no equitable relief

upon the facts in defense of the action for damages. Under codes like our own permitting equitable defenses in actions at law the equitable right may be presented and considered in defense without asking for or obtaining affirmative equitable relief. (Pomeroy's Code Rem., Secs. 88-91; Phillips on Code Pl., Secs. 239, 253; 7 Ency. Pl. & Pr. 807.)

But, upon the facts alleged and established, the specific relief declaring the trust and ordering a conveyance of the title is not the only affirmative relief that might have been granted by a court of equity, under the former practice when a purely equitable right could not be alleged as a defense to an action at law. The facts would have justified a decree in equity enjoining the further prosecution of the action for damages. Their effect as defensive matter under the present practice is substantially the same, for they deprive the plaintiff of his right to recover upon his alleged cause of action. If defendant had not acquired the legal title and should be granted a decree directing its conveyance to him, his right to defeat the action for damages would remain based upon his equitable title and the right to possession as the equitable and beneficial owner during the period covered by the claim for damages. The fact that there is no further necessity for directing the title to be conveyed, or declaring the trust upon which the legal title was held by the plaintiff, should not prevent the defendant from insisting upon his equitable title and right of possession thereunder in defense of the action, and, in our opinion, it does not.

As against the original plaintiff, the holder of the patent, the original defendant, before as well as after the patent, was entitled to possession, by virtue of his equitable title. The District Court therefore erred in deciding upon the equitable issues in favor of the plaintiffs. As this disposes of the entire case, a trial of the other issues becomes unnecessary. And there seems to be no substantial reason for ordering a new trial upon the equitable issues, instead of directing a judgment. The judgment will be reversed, and the cause remanded with directions to enter a judgment

for the defendant upon the equitable issues and final judgment in the action that the plaintiffs take nothing and defendant recover costs.                    *Reversed.*

BEARD, J., concurs.

ON PETITION FOR REHEARING.

BLYDENBURGH, JUSTICE.

Counsel for defendant in error has filed an application for a rehearing in this case and assigned thirty-five reasons or alleged errors in the decision of this court, accompanied by an elaborate brief. There seems to be but two points alleged why a rehearing should be had, or the opinion handed down November 1, 1917, in this case withdrawn or modified, that were not fully gone into and presented in the original briefs, viz.: First, that the writer hereof had taken his seat as a member of this court since the hearing and decision, and should take part in the application for a rehearing; and, second, that a four-year period of limitation applies to the matters set up in the equitable defense of the answer under Section 4300, Wyoming Compiled Statutes, 1910, instead of a ten-year period under Sections 4295 and 4303, as held in the opinion.

A change of membership in the court is not in itself sufficient reason to grant a rehearing. (4 C. J. 625.) And counsel recognizes this in his brief. The writer not being present at the argument and presentation of this case, has read the pleadings, original briefs of the parties, and the brief filed on behalf of the defendant in error with the application for rehearing, and carefully gone over the entire voluminous record and can see no good reason for disagreeing with the conclusions stated in the exhaustive opinion by Chief Justice Potter in this case.

In regard to the statute of limitations, counsel for defendant in error seems to have changed his mind as to which statute applies since the submission of the case to this court on the hearing. His pleadings, as far as they apply to any statute of this state, states a ten-year period and in his original brief he relies only on Sections 4295 and 4303, Wyo-

ming Compiled Statutes, 1910, as applicable, as is stated in the original opinion (168 Pac. on page 258). We believe counsel was right in his first idea that the ten-year period of limitation was the one that applied to the equitable defense plead in the answer and cross-petition, and that on the facts shown that period had not expired as held in the original opinion.

One other matter which was presented in the original brief is so emphasized in the brief for rehearing as to warrant mention, and that is the contention that the judgment of the District Court of Albany County in the case of Laramie National Bank v. Steinhoff, rendered May 21, 1892, was void *in toto,* and did not protect the possession of Wolbol. This matter was disposed of and settled in the case of Laramie National Bank v. Steinhoff, 11 Wyo. 290, 312, adversely to counsel's contention, as stated in the opinion in this case, although the same counsel made the same contention in his brief on rehearing in that case (11 Wyo., p. 302); and in the opinion on rehearing, Judge Corn (11 Wyo. on page 312) said: "Counsel contends * * * * that, therefore, the judgment itself was void *in toto* and must give way. But the conclusion does not follow. The court had jurisdiction to determine the question of the right of possession between these parties and had them before it." And the mandate in that case to the District Court plead and introduced in evidence in this case by defendant in error distinctly shows that the judgment in the original case, as far as it decreed the right of possession in the Bank prior to the issue of the United States patent, was valid and subsisting. Defendant in error having plead in the supplemental answer to the cross-petition that the plaintiffs' title had been acquired by the defendants below by purchase, thus eliminating the necessity of declaring that the legal title was held in trust for defendants below, the case stood, as far as plaintiffs were concerned, simply as a case for damages on account of possession by Wolbol during the same period that he held possession under the judgment of March 21, 1892, and the plaintiff having plead very fully the plead-

ings, judgment and mandate in that case, both in the District Court and the Supreme Court, which distinctly held the judgment as to the possession valid and subsisting for the time prior to the issuance of the patent, the whole case might well have been decided on the pleadings in favor of the defendant below.

The original briefs in this case were very elaborate, as is the brief for counsel for defendant in error on application for rehearing, and we can hardly see that oral argument would illuminate them or enlighten the court further. The original opinion very carefully and fully considered all the matters and points that had been raised and we believe they were rightly determined and no useful purpose would be served by a rehearing. Counsel for defendant in error, in his brief on the hearing, says: "Owing to the lapse of time, and the inexorable laws of nature, most of the judges and lawyers, as well as the litigants, have 'passed over the Range'." Now that all of the titles to the land in controversy, both legal and equitable, have become merged in the heirs of Wolbol, and all necessary matters have, as we believe, been rightly decided, it is meet that this long and vexatious litigation should be brought to a close before those judges and lawyers still connected with it have followed their predecessors "over the Range." *Requiescat in pace.* Rehearing denied.                              *Rehearing denied.*

POTTER, C. J., and BEARD, J., concur.