## CITIZENS' NAT. BANK OF CHEYENNE
## v. PUCKETT*

### (CRAWFORD MERCANTILE CO. et al., Intervenors)
(No. 1285; March 22, 1927; 254 Pac. 128.)

APPEAL AND ERROR — CHATTEL MORTGAGES — CONSENT TO SALES — AGREEMENT TO RELEASE CHATTEL MORTGAGE.

1. Where judgment is given adverse to interveners and they do not appeal, their rights will not be considered on appeal taken by plaintiff in the action.

2. Where chattel mortgage on general stock of merchandise permitted the mortgagor to sell the property in course of trade upon the written consent of the mortgagee, and mortgagor sold goods sufficient to pay the mortgage but did not obtain the mortgagee's written consent, *held* that he was not thereby released from the mortgage, since he could not take advantage of his own wrong.

3. Where chattel mortgagor and mortgagee enter into tripartite agreement with third party, whereby among other terms the mortgagor was to sell and the mortgagee to release the mortgage to such third party, and this agreement could not be carried out and was abandoned, *held* the goods were not released from the mortgage.

*See Headnotes: (1) 4 CJ p. 694 n. 98.  (2) 11 CJ p. 674 n. 18. (3) 11 CJ. p. 674 n. 18.

APPEAL from District Court, Weston County; HARRY P. ILSLEY, Judge.

Replevin action by the Citizens' National Bank of Cheyenne against A. L. Puckett, wherein the Crawford Mercantile Company and others intervened. Judgment for defendant, and against plaintiff and interveners. Plaintiff appeals.

*John P. Rusk* and *W. C. Mentzer*, for appellant.

The mortgage by its terms gave the mortgagee the right to take possession in case of default or at any time it felt insecure; a sale and replacement clause authorizes mortgagee to sell additions made to the stock; Leland v. Collver, 34 Mich. 418; Bagley v. Harmon, 91 Mo. App. 22; Gay v. Bidwell, 7 Mich. 519; 9 C. J. 1167; Waite v. Shoemaker, 146 P. 737. A bargain founded in a mutual mistake constituting the essence of a contract, will avoid it; Pratt v. Philbrook, 33 Me. 17. Jurisdiction is based on the fact that the minds of the parties never met; Chrislip v. Cain, 19 W. Va. 438; Morgan v. Owens, (Ill.) 81 N. E. 1135; Stahl v. Schwartz, (Wash.) 120 P. 856; Gleason Co. v. Carman, (Wash.) 187 P. 329. The foregoing authorities are decisive of the agreement of June 1, 1922, relating to a sale of the stock and a release of the mortgage, which agreement was rescinded and abandoned upon discovery that it could not be carried out; the point is also sustained by the following authorities: Mc Cord-Brady & Co. v. Bank, 6 Wyo. 507; Hasbrouck v. La Febre, 23 Wyo. 378. Mortgages of the class here involved are valid against creditors attempting to levy upon mortgaged chattels taken into possession by mortgagee; Williams v. Miller, (Kan.) 49 P. 703; Krug Co. v. Healy, (Nebr.) 99 N. W. 409; Little Co. v. Burnham, (Okla.) 49 P. 66; Martin v. Holloway, (Ida.) 102 P. 3; Coe v. Co., 10 Ohio St. 372; Hauselt v. Harrison, 105 U. S. 401; Gregory v. Mason, 96 U. S. 619.

*E. E. Wakeman, P. T. Mc Avoy,* and *E. C. Raymond,* for respondents.

Under the mortgage, the mortgagor was given permission to sell portions of the mortgaged property and replace the same with other property of like kind upon the written consent of the mortgagee, and apply the proceeds upon the debt; sales were made without written consent, and the proceeds were not applied upon the debt; other creditors had a right to rely upon this provision and to assume that proceeds of sales would be applied; the proof shows that more than enough was received from this source to pay the mortgage debt; the law will apply the proceeds to the mortgage debt, if the parties do not, to protect other creditors; Wyman v. Herard, 59 P. 102; Weill v. Bank, 11 S. E. 277. There was no evidence of mutual mistake, although that is pleaded as to the contract made for the sale of the property and the satisfaction of the mortgage; the authorities cited by appellant, 9 C. J. 18 and Gusivold v. Hazard, 11 S. C. 972, are not in point on the facts; even mutual mistake is not properly pleaded; Hearne v. Ins. Co., 20 Wall. 488; Taylor v. Ford, 63 P. 770; Poland v. Bromwell, 131 Mass. 138; Hunter v. Goudy, 1 Ohio 449; Wood v. Boynton, 25 N. W. 42; Hecht v. Batcheller, (Mass.) 17 N. E. 651; Osgood v. Franklin, 2 Johns. Ch. 23. The law furnishes no remedy for a bad bargain made ignorantly or negligently; Eltinge v. Bank, 11 Wheat. 59; Hunting v. Downer, 23 N. E. 832. There was no mutual rescission in this case, and defendant insists that his creditors shall be paid out of the sale of goods; the fact that the goods had once been mortgaged does not, of itself, create an interest that will support replevin.

BLUME, Chief Justice.

This is an action in replevin, brought by the Citizens National Bank of Cheyenne, Wyoming, against A. L.

Puckett.    From an adverse judgment plaintiff appeals. The parties will be referred to as in the case below.

On December 31, 1920, A. L. Puckett executed promissory notes aggregating $10,500, to the Citizens State Bank of Upton, all due within six months thereafter.    These notes were duly transferred before maturity to the plaintiff, the Citizens National Bank of Cheyenne.    The notes were secured by a chattel mortgage on the general stock of merchandise owned by Puckett in the town of Upton. The mortgage permitted the mortgagor to sell the property in due course of trade and to substitute other property therefor, as provided by section 4698, W. C. S. 1920, except that such permission was dependent upon "the written consent of the mortgagee"—a clause not contained in the statute authorizing such permission to sell. The notes were not paid at maturity and the bank, through John P. Rusk, its agent, made efforts to collect them.    At that time Puckett also owed considerable money to various wholesalers who had sold him merchandise for the store, including the Crawford Mercantile Company and others who intervened in this action and who will hereinafter be called the intervenors.    On June 1, 1922, the Pioneer Mercantile Company, a corporation of Upton, Wyoming, was willing to buy the stock of merchandise from Puckett, and on that date a tripartite written agreement was entered into by and between that corporation, as party of the first part, A. L. Puckett, as party of the second part, and Citizens National Bank of Cheyenne, as party of the third part.    The agreement provided, in brief, that it was· the intention of the parties that the Pioneer Mercantile Company should take over the stock of merchandise aforesaid, together with the fixtures, paying the invoice price for the stock of merchandise and $1,000 for the fixtures; that the money realized from the sale should be paid to Rusk, as agent for the Citizens National Bank; that the wholesalers should first be paid and that the balance should be applied upon the notes due and

owing to the bank, which thereupon should release the chattel mortgage aforesaid so as to give a clear title to the Pioneer Mercantile Company; that Puckett should furnish an itemized statement of the account due and owing, as contemplated by the Bulk Sales Law of this state; and that an inventory of the property should be taken immediately. The testimony shows that it was considered by the parties at the time that the contract aforesaid was entered into, that the accounts due and owing, as above mentioned, would not amount to more than $3,000; that the value of the stock of merchandise and of the fixtures was approximately $8,000 to $9,000, which would leave to be applied upon the indebtedness to the bank approximately $5,000 to $6,000. That this, as we read the record, was believed to be the situation, is not seriously disputed, if at all. An inventory was taken of the merchandise, commencing on June 3rd or 4th, 1922, and finished within a day or two thereafter. This showed a valuation of only $2500, and, together with the amount agreed to be paid for the fixtures, made only $3500, instead of at least $8,000. It further appeared from an itemized statement furnished by Puckett, that the accounts due to wholesalers, instead of amounting to $3,000 or less, amounted to about $5500, making it impossible to pay even the wholesalers, as contemplated by the agreement aforesaid. The conduct of the parties immediately subsequent to the time that this actual situation appeared is not altogether clear. Evidently they were uncertain what to do. Puckett asked for time to find some other purchaser who would give more for the property. This request was refused and it is clear that the Pioneer Mercantile Company would not have gone on with the intended purchase except upon finding some way—which was never found—to satisfy the wholesalers, in accordance with the agreement aforesaid, aside from requiring the release of the chattel mortgage held by the bank. In any event, nothing further was done under the agreement, and on June 10, 1922, the bank

brought their action heretofore mentioned. A writ of replevin was issued, the sheriff took possession of the property and, upon plaintiff giving bond, turned it over to Rusk, as the agent of the bank, who proceeded to foreclose the mortgage.

Within a few days thereafter the intervenors herein obtained a judgment against A. L. Puckett—most of them by confession—issued an execution thereon and seized the same property which had previously been taken under the writ of replevin. And they all, thereafter, upon motion made and leave granted, intervened in plaintiff's action in replevin, claiming the right of possession of the property, among other reasons because they had seized the property under execution and because the plaintiff should be held to have been paid through the sales made by Puckett, though not applied on the mortgage—basing the latter claim on the fact that such sales were asquiesced in by the bank without giving the written consent required by the terms of the mortgage. The case was tried to the court, without the intervention of a jury, upon the petition of the bank, the answer of A. L. Puckett and the issues joined between the original parties and the intervenors. The court rendered judgment on September 5, 1924, finding against the intervenors as well as the bank, and adjudging that the defendant Puckett had the right of possession of said property at the time of the commencement of the action. The bank alone appealed.

1. It is contended that though the judgment in the court below was adverse to the intervenors, and though they have not appealed, their rights may be considered and adjudicated in this court, in view of the fact that the bank has appealed from the judgment aforesaid and the whole of it. This contention cannot, however, be sustained. The plaintiff took an appeal from the judgment in so far as it was adverse to it, and not, of course, in so far as it was in its favor. In 4 C. J. 694 it is said:

"By the great weight of authority an appellee or defendant in error is not entitled, in the absence of a statute authorizing cross assignments of error, to present for review exceptions taken by him to rulings, orders, instructions, decisions or findings of the trial court unless he has taken or sued out a separate, or cross, appeal, petition in error or writ of error."

This rule has already, we think, been established in this state by three separate decisions, namely those of Johnson v. Golden, 6 Wyo. 537, 48 P. 196; Wolbol v. Steinhoff, 25 Wyo. 227, 256, 168 P. 251, 170 P. 381, and Hall Oil Company v. Barquin, 33 Wyo. 92, 163, 237 P. 255. In the first of these cases the court said:

"And the general rule is that an appellee can reap no advantage from adverse rulings unless he properly presents them on appeal by properly assigning them as the law and rules of the court direct."

In the second of these cases the defendants in error complained of the refusal of the court to separate legal and equitable issues in the trial, but this court said:

"Nor do we understand that the defendants in error are in a position here to complain of that action, although they objected and excepted to it in the trial court; they have filed no cross-petition in error and are not complaining of the judgment."

The rule of the Golden case was reaffirmed in the recent case of Hall Oil Company v. Barquin, supra, where, as in the Golden case, the defendant in error filed no motion for a new trial. But the rule, obviously, is not confined to cases of that kind, but all the various rules of law, including the filing of a separate or cross appeal, must be followed in order that this court may be authorized to review the errors upon which a defendant in error, or respondent, may desire to rely. The only question, accordingly, before this court is as to whether the bank or

Puckett were entitled to possession of the property at the time of the commencement of this action, and the intervenors herein must be taken to have been satisfied with the judgment against them.

2.    The chattel mortgage above mentioned is in the usual form, with the exception of the clause above mentioned, and gave the mortgagee the right of possession of the mortgaged property upon default in the terms of the mortgage, which existed in this case. It is clear, therefore, that the bank was entitled to the possession of the property, as against Puckett, unless its right was destroyed in some manner. The fact that Puckett, with the acquiescence of the bank, sold goods sufficient to pay the mortgage, would not affect the rights of the bank, so far as he was concerned, in the absence of actual payment of the indebtedness due it, even though the written consent mentioned in the mortgage was not given, for the reason that he could not take advantage of his own wrong, and claim that he was released because he failed to fulfill his duty in applying the proceeds of sales on the mortgage indebtedness. And the agreement aforesaid gave no right of possession to Puckett, as against the mortgage, at least not in any direct way. It did not purport to give that to him, but on the contrary contemplated that the property should be turned over to the Pioneer Mercantile Company upon the completion of the intended purchase. In fact Puckett was given no right whatever under the agreement, at least directly. Only certain duties were imposed upon him therein, in order to effectuate the sale to the Pioneer Mercantile Company. It has been suggested that the agreement constituted a release. But it does not purport to be that. And in view of the fact that the Pioneer Mercantile Company is not here complaining; that, under the situation as it developed, the agreement proved to be neither an advantage to the bank nor a disadvantage to Puckett over and above the disad-

vantage under which he was already laboring—it may be doubted that there was any consideration for the agreement as between the bank and Puckett. But we need not decide the point. The fact remains that the agreement was not carried to completion; the sale was never made; possession was never given under it; the parties at the time of the commencement of the action were in the same situation as they were at the time that the agreement was entered into. It was not the fault of the bank that this situation arose. Even Puckett probably sincerely believed that there was a sufficient equity in the property to pay the wholesalers and to make a substantial payment to the bank. But it turned out to be otherwise. It became impossible to carry the agreement or any part of it to completion. The record herein and the briefs of counsel offer no suggestions as to how that might have been done. Even though Rusk was the first to suggest or insist that the agreement could not be carried out, he simply stated a fact which was patent to everyone. Puckett offered no solution except to ask for more time to find some other purchaser. This amounted to a confession on his part that the agreement already made could not be carried out. Nor was any solution offered by the Pioneer Mercantile Company. The agreement must accordingly be treated as having been abandoned, leaving plaintiff the right to proceed under its mortgage. We are unable to see, how upon any theory of the case, there would be any justice in giving the right of possession of the property to Puckett, as against the bank.

The judgment of the District Court must accordingly be reversed, and the cause remanded with directions to enter judgment declaring the plaintiff entitled to the right of possession of the property in controversy at the time of the commencement of the action, with the right of plaintiff to recover costs.

*Reversed and Remanded.*

POTTER, J., and KIMBALL, J., concur.